THE HONORABLE KYMBERLY K. EVANSON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

THE UPPER DECK COMPANY, a Nevada corporation,

               Plaintiff,

     v.

RYAN MILLER, an individual; and RAVENSBURGER NORTH AMERICA, INC., a Washington corporation,

               Defendants.

No. 2:23-cv-01936

**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

**NOTE ON MOTION CALENDAR: MARCH 1, 2024**

DEFENDANTS' MOTION TO DISMISS FAC
(No. 2:23-cv-01936)

**Perkins Coie LLP**
505 Howard Street, Suite 1000
San Francisco, California 94105
Phone: +1.415.344.7000
Fax: +1.415.344.7050

# TABLE OF CONTENTS

Page

I.   Introduction ......................................................................................................... 1

II.  Background and Procedural History ..................................................................... 2

    A.   Factual background ..................................................................................... 2

        1.   The Parties ...................................................................................... 2

        2.   Miller's relationship with Upper Deck ............................................ 3

        3.   Ravensburger's development of Lorcana ......................................... 4

    B.   Procedural history ....................................................................................... 4

III. Upper Deck's Claims Fail as a Matter of Law. ................................................... 5

    A.   Applicable law. ........................................................................................... 5

    B.   The fiduciary duty claim should be dismissed............................................ 6

    C.   The fraud claim should be dismissed. ......................................................... 9

    D.   The claim for inducing breach of contract should be dismissed.......................... 12

    E.   The intentional interference with prospective economic relations claim should be dismissed. ............................................................................... 15

    F.   Upper Deck's copyright claims fail as a matter of law........................................ 17

    G.   The conversion claim should be dismissed........................................ 20

    H.   The unfair competition claim fails as a matter of law. ......................................... 21

IV.  Conclusion .......................................................................................................... 22

DEFENDANTS' MOTION TO DISMISS FAC – i
(No. 2:23-cv-01936)

**Perkins Coie LLP**
505 Howard Street, Suite 1000
San Francisco, California 94105
Phone: +1.415.344.7000
Fax: +1.415.344.7050

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A & M Recs., Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001) ..................................................................19

*Aas v. Superior Ct.*,
  24 Cal. 4th 627 (2000) ..........................................................................8, 9

*Alejandre v. Bull*,
  159 Wash. 2d 674 (2007) ................................................................8, 9, 20

*Alexander v. Sanford*,
  181 Wash. App. 135 (2014) ......................................................................6

*Arden v. Forsberg & Umlauf, P.S.*,
  193 Wash. App. 731 (2016) ......................................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...........................................................................5, 16

*Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.*,
  672 F.2d 607 (7th Cir. 1982) ..................................................................18

*August v. U.S. Bancorp*,
  146 Wash. App. 328 (2008) ....................................................................11

*Birkenwald Distrib. Co. v. Heublein, Inc.*,
  55 Wash. App. 1 (1989) ....................................................................14, 15

*BNSF Ry. Co. v. Tyrrell*,
  581 U.S. 402 (2017) ..................................................................................6

*Boschma v. Home Loan Ctr., Inc.*,
  198 Cal. App. 4th 230 (2011) ..................................................................11

*BP W. Coast Prods., LLC v. Crossroad Petrol., Inc.*,
  2013 WL 12377979 (S.D. Cal. Dec. 3, 2013) ...........................................9

*Branch v. Tunnell*,
  14 F.3d 449 (9th Cir. 1994) ......................................................................4

*Burton v. City of Spokane*,
  16 Wash. App. 2d 769, 773 (2021) ..........................................................20

**Perkins Coie LLP**
505 Howard Street, Suite 1000
San Francisco, California 94105
Phone: +1.415.344.7000
Fax: +1.415.344.7050

1

**TABLE OF AUTHORITIES (continued)**

2

**Page(s)**

3

*Carlile v. Harbour Homes, Inc.*,
    147 Wash. App. 193 (2008).................................................................10

4

5

*CD L., Inc. v. LawWorks, Inc.*,
    1994 WL 840929 (W.D. Wash. Dec. 21, 1994) ...................................20

6

*Cho v. Hyundai Motor Co.*,
    636 F. Supp. 3d 1149 (C.D. Cal. 2022) ...............................................12

7

8

*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    68 Cal. App. 4th 445 (1998) ..................................................................6

9

*City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*,
    43 Cal. 4th 375 (2008) ......................................................................7, 8

10

*CleanFuture, Inc. v. Motive Energy, Inc.*,
    2019 WL 2896132 (C.D. Cal. Apr. 15, 2019) .......................................9

11

12

*Comercializadora Recmaq v. Hollywood Auto Mall, LLC*,
    2014 WL 3628272 (S.D. Cal. July 21, 2014) ........................................7

13

14

*Counts v. Meriwether*,
    2015 WL 12656945 (C.D. Cal. June 12, 2015) ...................................20

15

*Crafty Prods., Inc. v. Michaels Cos.*,
    389 F. Supp. 3d 876 (S.D. Cal. 2019)..................................................21

16

17

*Daniels v. Walt Disney Co.*,
    958 F.3d 767 (9th Cir. 2020) ...............................................................19

18

19

*DaVinci Editrice S.R.L. v. ZiKo Games, LLC*,
    183 F. Supp. 3d 820 (S.D. Tex. 2016) .................................................18

20

*DC Comics v. Towle*,
    802 F.3d 1012 (9th Cir. 2015) .............................................................19

21

22

*Dyson, Inc. v. Garry Vacuum, LLC*,
    2010 WL 11595882 (C.D. Cal. July 19, 2010).....................................21

23

24

*Eastwood v. Horse Harbor Found., Inc.*,
    170 Wash. 2d 380 (2010)......................................................................20

25

26

DEFENDANTS' MOTION TO DISMISS FAC
(No. 2:23-cv-01936) – iii

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

*Gerritsen v. Warner Bros. Ent. Inc.*,
    112 F. Supp. 3d 1011 (C.D. Cal. 2015) ................................................................17

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011).................................................................................................6

*Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*,
    86 Wash. App. 732 (1997).......................................................................................7

*Graham v. Bank of Am., N.A.*,
    226 Cal. App. 4th 594 (2014).................................................................................10

*Imageline, Inc. v. CafePress.com, Inc.*,
    2011 WL 1322525 (C.D. Cal. Apr. 6, 2011) ..........................................................8

*Island Air, Inc. v. LaBar*,
    18 Wash. App. 129 (1977).....................................................................................14

*Ixchel Pharma, LLC v. Biogen, Inc.*,
    9 Cal. 5th 1130 (2020) ..........................................................................................14

*Khoja v. Orexigen Therapeutics*,
    899 F.3d 988 (9th Cir. 2018) ..................................................................................3

*Kitsap Bank v. Denley*,
    177 Wash. App. 559 (2013)......................................................................................7

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) ...................................................................................15, 21

*Kwikset Corp. v. Superior Ct.*,
    51 Cal. 4th 310 (2011) ..........................................................................................21

*Libera v. City of Port Angeles*,
    178 Wash. App. 669 (2013)....................................................................................15

*Life Designs Ranch, Inc. v. Sommer*,
    191 Wash. App. 320 (2015)....................................................................................15

*Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP*,
    110 Wash. App. 412 (2002)..................................................................................7, 8

DEFENDANTS' MOTION TO DISMISS FAC
(No. 2:23-cv-01936) – iv

**Perkins Coie LLP**
505 Howard Street, Suite 1000
San Francisco, California 94105
Phone: +1.415.344.7000
Fax: +1.415.344.7050

1

**TABLE OF AUTHORITIES (continued)**

2

**Page(s)**

3

*Moon v. Phipps*,

4

    67 Wash. 2d 948 (1966)...................................................................................8

5

*Moore v. Com. Aircraft Interiors, LLC*,

    168 Wash. App. 502 (2012)...........................................................................15

6

*N.Y. Studio, Inc. v. Better Bus. Bureau of Alaska, Or., & W. Wash.*,

7

    2011 WL 2414452 (W.D. Wash. June 13, 2011)...........................................13

8

*Navarro v. Block*,

9

    250 F.3d 729 (9th Cir. 2001) ...........................................................................5

10

*Nelson v. Int'l Paint Co.*,

    716 F.2d 640 (9th Cir. 1983) ...........................................................................5

11

*Norwest Mortg., Inc. v. Superior Ct.*,

12

    72 Cal. App. 4th 214 (1999) ............................................................................9

13

*Nuvo Rsch. Inc. v. McGrath*,

    2012 WL 1965870 (N.D. Cal. May 31, 2012) ..............................................21

14

*O'Byrne v. Santa Monica–UCLA Med. Ctr.*,

15

    94 Cal. App. 4th 797 (2001) ............................................................................6

16

*Organo Gold Int'l, Inc. v. Ventura*,

17

    No. C16-487RAJ, 2016 WL 1756636 (W.D. Wash. May 3, 2016)...............14

18

*Pemberton v. Nationstar Mortg. LLC*,

    331 F. Supp. 3d 1018 (S.D. Cal. 2018)..........................................................10

19

*Rentmeester v. Nike, Inc.*,

20

    883 F.3d 1111 (9th Cir. 2018) .......................................................................17

21

*Robinson Helicopter Co. v. Dana Corp.*,

22

    34 Cal. 4th 979 (2004) ...................................................................................12

23

*Roil Energy, LLC v. Edington*,

    2016 WL 4132471 (Wash. Ct. App. Aug. 2, 2016)........................................12

24

*Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*,

25

    521 F. Supp. 3d 929 (S.D. Cal. 2021).....................................................13, 16

26

DEFENDANTS' MOTION TO DISMISS FAC
(No. 2:23-cv-01936) – v

**Perkins Coie LLP**
505 Howard Street, Suite 1000
San Francisco, California 94105
Phone: +1.415.344.7000
Fax: +1.415.344.7050

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2000) ...........................................................................................5, 13

*Spry Fox LLC v. LOLApps Inc.*,
2012 WL 5290158 (W.D. Wash. Sept. 18, 2012) ...................................................................19

*State Farm Mut. Auto. Ins. v. Peter J. Hanson, P.C.*,
2017 WL 1304445 (W.D. Wash. Feb. 3, 2017) .......................................................................16

*Sybersound Recs., Inc. v. UAV Corp.*,
517 F.3d 1137 (9th Cir. 2008) ...................................................................................................16

*Tamosaitis v. Bechtel Nat'l, Inc.*,
182 Wash. App. 241 (2014) ........................................................................................................16

*United States ex rel. Integrated Energy, LLC v. Siemens Gov't Techs., Inc.*,
2016 WL 11743176 (C.D. Cal. June 13, 2016) .......................................................................21

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ........................................................................................................3

*Van Dusen v. Barrack*,
376 U.S. 612 (1964) .........................................................................................................................5

*Walden v. Fiore*,
571 U.S. 277 (2014) .........................................................................................................................6

*Wash. Imaging Servs., LLC v. Wash. State Dep't of Revenue*,
171 Wash. 2d 548 (2011) ..............................................................................................................7

*Williams v. Yamaha Motor Co.*,
851 F.3d 1015 (9th Cir. 2017) ......................................................................................................6

*Wilsey v. Oregon Mut. Ins.*,
2012 WL 13020083 (W.D. Wash. Oct. 18, 2012) ....................................................................9

*Yellowcake, Inc. v. Morena Music, Inc.*,
522 F. Supp. 3d 747 (E.D. Cal. 2021).......................................................................................21

*Zumbrun v. Univ. of S. Cal.*,
25 Cal. App. 3d 1 (1972) ..............................................................................................................8

DEFENDANTS' MOTION TO DISMISS FAC
(No. 2:23-cv-01936) – vi

**Perkins Coie LLP**
505 Howard Street, Suite 1000
San Francisco, California 94105
Phone: +1.415.344.7000
Fax: +1.415.344.7050

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

STATUTES

17 U.S.C. § 102(b) ............................................................................................... 1, 18

17 U.S.C. § 505 ........................................................................................................ 17

California Civil Code § 1709 ................................................................................. 9, 10

California Civil Code § 1710 ................................................................................. 9, 10

RULES

Rule 9(b) .................................................................................................................... 10

Rule 12(b)(6) ......................................................................................................... 5, 21

OTHER AUTHORITIES

Adam Clare, *A Primer On Collectible And Trading Card Games*, REALITY IS A
    GAME (Feb. 2, 2014), http://www.realityisagame.com/archives/2513/a-primer-
    on-collectible-and-trading-card-games/ ................................................................ 2

15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §§
    3842, 3846 ............................................................................................................ 5

*How To Play*, DISNEY LORCANA, https://www.disneylorcana.com/en-US/how-to-
    play/ (last visited Aug. 20, 2023) ........................................................................ 4

1 *Nimmer on Copyright* § 2A.14 (2023) .................................................................. 18

Restatement (Second) of Torts § 766 cmt. i (Am. L. Inst. 1979) ............................. 14

U.S. Copyright Office, *Compendium of U.S. Copyright Office Practices* § 714
    Games (3d ed. 2021) ............................................................................................ 18

U.S. Copyright Office, Form VA (revised May 2019)
    https://www.copyright.gov/forms/formva.pdf ..................................................... 17

**Perkins Coie LLP**
505 Howard Street, Suite 1000
San Francisco, California 94105
Phone: +1.415.344.7000
Fax: +1.415.344.7050

## I.     Introduction

Defendants Ryan Miller and Ravensburger North America, Inc. move to dismiss the First Amended Complaint ("**FAC**") (Dkt. No. 12) filed by The Upper Deck Company. The crux of Upper Deck's case is that Mr. Miller took Upper Deck's "ideas" for a trading card game and used them to help Ravensburger create a game of its own.

Even a cursory review of the two games would show that Ravensburger's game—which is based on Disney characters, and was in the works long before Mr. Miller joined the company—is nothing like Upper Deck's game. The similarities are generic traits shared by all card games; otherwise, these games are distinct in every way that matters. Discovery will show Upper Deck's suit to be a strained and clumsy effort to slow down a competitor. But that's not the focus of this motion.

Upper Deck's laundry list of claims should be dismissed because they fail as a matter of law, even under the most basic level of scrutiny. The fiduciary duty claim fails because Mr. Miller is not and never was a fiduciary to Upper Deck; and his agreements confirm as much. The fraud claim fares no better—Upper Deck's attempt to use this claim, and others, to manufacture a non-compete clause where none exists is the legal equivalent of alchemy. By suing a former contractor simply for seeking another job, Upper Deck says the quiet part out loud: it wants to squelch competition and intimidate workers.

The inducement to breach claim fails because it's based on a "should have known" theory that courts have repeatedly rejected. The interference claim fails because *hiring* someone isn't a wrongful act—again, there is no non-compete at issue. The copyright claim is a distraction, and Upper Deck deliberately does not attach the registration and *has refused to send it to Defendants*. Keeping this claim vague is a feature, not a bug: Upper Deck wants to obscure that *game mechanics cannot be copyrighted. See* 17 U.S.C. § 102(b). The conversion and unfair competition claims fail outright because *ideas* cannot be converted, and for its unfair competition claim, Upper Deck does not even bother to identify the statutory provisions on which it relies.

DEFENDANTS' MOTION TO DISMISS FAC – 1
(No. 2:23-cv-01936)

1       Upper Deck has now had *six months* to refine its allegations, and the amendments

2  confirm that the claims still fail as a matter of law.

3  **II.**     **Background and Procedural History**

4       **A.**     **Factual background**

5       Trading card games (e.g., Pokémon and Magic: The Gathering) have been popular among

6  those who play them for decades.[1] Trading Card Games (or "**TCGs**" for short) typically share a

7  common logic and similar characteristics. *Id.* For example, players build their own unique deck

8  of cards; each card typically has a "cost," "speed," "type," "color," and "rarity"; and players

9  employ cards using widely recognized "core tactics." *Id.*

10       **1.**     **The Parties**

11       Upper Deck is a "worldwide sports and entertainment company" incorporated in Nevada

12  with its principal place of business in Carlsbad, California. FAC ¶ 18. Upper Deck manufactures

13  TCGs, the latest of which is the "still-in-progress" Rush of Ikorr. *Id.* ¶ 22.

14       Ravensburger is a Washington toy and game maker with its principal place of business in

15  Seattle, Washington. *Id.* ¶¶ 14, 20. Ravensburger makes puzzles, tabletop games, and other

16  children's toys with a family-friendly focus. Ravensburger's latest family-friendly game is

17  Disney Lorcana, a card-game based on the vast library of Disney characters like Aladdin, Elsa,

18  Moana, and Mickey Mouse. *Id.* ¶ 9.

19       Ryan Miller is a longtime Washington resident and a prominent TCG designer. With

20  decades of experience in the industry, Mr. Miller has worked on several popular games, such as

21  Magic: The Gathering, Duel Masters, and Digimon. FAC ¶ 23.

22       Mr. Miller joined Ravensburger in Seattle as a full-time employee on November 9, 2020.

23  Decl. of Ryan Miller ("**Miller Decl.**") ¶ 3. Prior to joining Ravensburger, Mr. Miller worked as

24

25  ---
[1] *See* Adam Clare, *A Primer On Collectible And Trading Card Games*, REALITY IS A GAME (Feb.

26  2, 2014), http://www.realityisagame.com/archives/2513/a-primer-on-collectible-and-trading-card-games/.

DEFENDANTS' MOTION TO DISMISS FAC – 2
(No. 2:23-cv-01936)

1    an independent freelance game designer and consultant. *Id.* ¶ 4.

2              **2.      Miller's relationship with Upper Deck**

3            During his time as a freelance game designer, Mr. Miller was retained by Upper Deck to

4    collaborate and develop a TCG known as "Shell Beach." Miller Decl. ¶¶ 5–6, 8; *id.* Ex. 2 ("Shell

5    Beach Agreement"). Upper Deck alleges that the Shell Beach game became Rush of Ikorr. FAC

6    ¶ 29.

7            Mr. Miller's involvement with Shell Beach began around November 2018, when Upper

8    Deck invited him and "several game designers" to a summit to brainstorm and collaborate on

9    new TCGs. FAC ¶¶ 4, 26, 28. In exchange for compensation for his time and work over a

10   weekend visit to Upper Deck, Mr. Miller signed the 2018 Upper Deck Gaming Summit

11   Agreement. *Id.* ¶ 24; *see also* Miller Decl. ¶ 7, Ex. 1 ("Summit Agreement") (together with the

12   Shell Beach Agreement, the "Agreements").[2]

13          In June 2019, Upper Deck retained Mr. Miller as an independent contractor to do

14   additional design work for the Shell Beach game. *See* FAC ¶¶ 29–30; *see also* Miller Decl. ¶ 8,

15   Ex. 2 at 13 (Shell Beach Agreement § 2). Mr. Miller was compensated based on his completion

16   of various milestones. FAC ¶¶ 30, 34.

17          Like many freelancers, Mr. Miller eventually concluded that he needed stable, full-time

18   employment, and on October 21, 2020, he informed Upper Deck that he would be terminating

19   the Shell Beach Agreement. *Id.* ¶ 35. Upper Deck alleges that it retained two new work-for-hire

20   game designers who continued to work on Upper Deck's TCG project. FAC ¶ 38. In April 2023,

21   Upper Deck filed a trademark application for the Rush of Ikorr name and a provisional patent

22   application for the game. *See* FAC ¶ 40. Upper Deck filed two copyright applications for certain

23

24

25   [2] The Agreements are incorporated into the FAC and thus may be considered with the pleadings. *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir. 2018); *United States v. Ritchie*, 342

26   F.3d 903, 908 (9th Cir. 2003).

1    unspecified aspects of Rush of Ikorr on June 7, 2023, the *same day* it filed this lawsuit.[3]

2                  **3.      Ravensburger's development of Lorcana**

3             In early 2020, Ravensburger's representatives met with Disney to pitch a family-friendly

4    TCG featuring Disney characters. Decl. of Florian Baldenhofer ("**Baldenhofer Decl.**") ¶ 3.

5    Ravensburger quickly put together a team. Months later, in November 2020, the company hired

6    Mr. Miller. *Id.* ¶ 3; Miller Decl. ¶ 3; FAC ¶ 37. The Ravensburger team of designers, developers,

7    and artists worked for years to create a cohesive game that would appeal to both die-hard and

8    new trading card gamers alike. Baldenhofer Decl. ¶ 4; FAC ¶ 41.

9             On August 30, 2022, Ravensburger announced its years-long development of Lorcana

10   along with plans to release the first "Chapter" of the game in fall 2023. Baldenhofer Decl. ¶ 5. In

11   April 2023, Ravensburger released the game rules and video demonstrations. *Id.* ¶ 6; FAC ¶ 42;

12   *see also How To Play*, DISNEY LORCANA, https://www.disneylorcana.com/en-US/how-to-play/

13   (last visited Aug. 20, 2023).[4] Lorcana was released on August 18, 2023.

14        **B.      Procedural history**

15            On June 7, 2023, Upper Deck filed this lawsuit in San Diego Superior Court alleging that

16   Mr. Miller stole Upper Deck's Rush of Ikorr game and gave it to Ravensburger. Defendants

17   removed the case to federal court, and then filed a motion to dismiss (Dkt. No. 7), prompting

18   Upper Deck to file the FAC.

19            On August 21, 2023, Defendants filed a second motion to dismiss and/or transfer the case

20   to this Court. *See* Dkt. No. 20. On December 14, 2023, the Southern District of California

21   granted Defendants' motion in part, ordering the transfer of venue to this Court's jurisdiction,

22

23   _____

     [3] *See* Decl. of David A. Perez ("**Perez Decl.**") Exs. A–B (U.S. Copyright Office registration
24   records for VAu 1-499-443 and VAu 1-500-801).

25   [4] The Court may take judicial notice of publicly available documents, including websites and
     their contents, at the motion to dismiss stage. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.
26   1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th
     Cir. 2002).

DEFENDANTS' MOTION TO DISMISS FAC – 4
(No. 2:23-cv-01936)

1    denying Defendants' accompanying motion to seal the Agreements (Dkt. No. 21), and declining

2    to rule on the merits of the motion to dismiss. *See* Dkt. No. 29-1.

3        Defendants now renew their motion to dismiss the FAC.

4    **III.    Upper Deck's Claims Fail as a Matter of Law.**

5        A complaint must contain sufficient factual matter to "state a claim to relief that is

6    plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible

7    "when the plaintiff pleads factual content that allows the court to draw the reasonable inference

8    that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard . . . asks for

9    more than a sheer possibility that a defendant acted unlawfully." *Id.*

10        Dismissal is appropriate where there is no cognizable legal theory or where there are

11    insufficient facts alleged to support a cognizable legal theory. *Navarro v. Block*, 250 F.3d 729,

12    732 (9th Cir. 2001). In ruling on a Rule 12(b)(6) motion, the Court need not "accept as true

13    allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

14    inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2000) (subsequent

15    history omitted). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of

16    action" do not suffice. *Iqbal*, 556 U.S. at 678.

17    **A.    Applicable law.**

18        As a general rule, when a case is transferred, the law of the transferor court (here,

19    California) applies. *Van Dusen v. Barrack*, 376 U.S. 612 , 639–40 (1964). This rule does not

20    apply, however, where the transferor court lacked jurisdiction. *Nelson v. Int'l Paint Co.*, 716

21    F.2d 640, 643 (9th Cir. 1983); *see also* 15 Charles Alan Wright & Arthur R. Miller, *Federal*

22    *Practice and Procedure* §§ 3842, 3846 (4th ed. Oct. 2023 update). Here, the Court need not

23    apply California law because as briefly explained below and Defendants' first motion to dismiss

24    the FAC (*see* Dkt. No. 21 at 26–33), the Southern District of California lacked personal

25    jurisdiction over Defendants.

26        General personal jurisdiction does not exist because neither Mr. Miller nor Ravensburger

1    are properly considered at home in California. *See Goodyear Dunlop Tires Operations, S.A. v.*

2    *Brown*, 564 U.S. 915, 919 (2011) (affiliations with the State must be "so 'continuous and

3    systematic' as to render [the defendant] essentially at home in the forum") (citation omitted);

4    *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (the place of incorporation and principal

5    place of business are the "paradigm forum in which a corporate defendant is at home") (cleaned

6    up). Moreover, specific jurisdiction does not exist because both Defendants are located in

7    Washington, and their working relationship is centered in Washington—not California, *see* FAC

8    ¶¶ 19, 20, 83, and "mere [alleged] injury to a forum resident [i.e., Upper Deck] is not a sufficient

9    connection to the forum." *Walden v. Fiore*, 571 U.S. 277, 290 (2014); *see also Williams v.*

10   *Yamaha Motor Co.*, 851 F.3d 1015, 1022–23 (9th Cir. 2017) (suit-related conduct must create a

11   substantial connection with the forum State).

12        Accordingly, to any claims in which there is a question as to the applicable law, this

13   Court should apply Washington law, including applying Washington's choice of law analysis, if

14   necessary. For purposes of this motion, as discussed below for each claim, Washington and

15   California law are substantively the same for the applicable claims, and Plaintiff's claims fail

16   under both and should be dismissed.

17        **B.    The fiduciary duty claim should be dismissed.**

18        Upper Deck alleges Mr. Miller "breached his fiduciary duty to Upper Deck by stealing

19   core concepts and proprietary, novel elements of [Rush of Ikorr] and using it to develop

20   Lorcana." FAC ¶ 78. This claim fails for at least two reasons.

21        ***First***, Upper Deck has not alleged an essential element of its claim: a fiduciary

22   relationship with Mr. Miller.[5] In the absence of a fiduciary relationship, there is no fiduciary duty

23   owed. *Alexander v. Sanford*, 181 Wash. App. 135, 173 (2014); *see also O'Byrne v. Santa*

24

25   [5] The elements of a claim for breach of fiduciary duty are the same in Washington and California.
     *See Arden v. Forsberg & Umlauf, P.S.*, 193 Wash. App. 731, 743, (2016); *see also City of*
26   *Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 483 (1998).

DEFENDANTS' MOTION TO DISMISS FAC – 6
(No. 2:23-cv-01936)

**Perkins Coie LLP**
505 Howard Street, Suite 1000
San Francisco, California 94105
Phone: +1.415.344.7000
Fax: +1.415.344.7050

1   *Monica–UCLA Med. Ctr.*, 94 Cal. App. 4th 797, 812 (2001) (same).

2      "As a general rule, participants in a business transaction deal at arm's length and do not

3   enter into a fiduciary relationship." *Kitsap Bank v. Denley*, 177 Wash. App. 559, 574 (2013). To

4   the contrary, "[f]iduciary relationships . . . may arise in circumstances in which any person

5   whose relation with another is such that the latter justifiably expects his welfare to be cared for

6   by the former." *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 86 Wash. App. 732, 741

7   (1997) (internal quotation omitted); *see also City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43

8   Cal. 4th 375, 386 (2008) (citation omitted) ("[B]efore a person can be charged with a fiduciary

9   obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or

10  must enter into a relationship which imposes that undertaking as a matter of law.").

11     Here, the Agreements contain no indicia whatsoever that Mr. Miller undertook any

12  obligation to care for or otherwise act on behalf of Upper Deck. Indeed, the Agreements state the

13  opposite: "[Mr. Miller] shall have ***no right or authority . . . to assume or create an obligation or***

14  ***liability of any kind . . . in the name of or on behalf of UDC***." Miller Decl. Ex. 1, at 7 (Summit

15  Agreement § 3) (emphasis added); *id.* Ex. 2, at 16 (Shell Beach Agreement § 9). That is

16  dispositive.

17     Nor did Mr. Miller's relationship with Upper Deck impose a fiduciary obligation as a

18  matter of law. Such obligations legally arise in contexts such as attorney/client, partners, joint

19  venturers, principal/agent, and trustee/beneficiary. *See Micro Enhancement Int'l, Inc. v. Coopers*

20  *& Lybrand, LLP*, 110 Wash. App. 412, 434 (2002) (listing categories of fiduciary relationships);

21  *accord Comercializadora Recmaq v. Hollywood Auto Mall, LLC*, 2014 WL 3628272, at *13

22  (S.D. Cal. July 21, 2014). But the Agreements ***expressly disclaim*** the creation of "a partnership,

23  joint venture, or similar arrangement between [Mr. Miller] and UDC." Miller Decl. Ex. 1, at 7

24  (Summit Agreement § 3); *id.* Ex. 2, at 16 (Shell Beach Agreement § 9). That is also dispositive.

25     The Agreements also prohibit Mr. Miller from acting on Upper Deck's behalf, a

26  prerequisite to an agency relationship. *Id.*; *Wash. Imaging Servs., LLC v. Wash. State Dep't of*

DEFENDANTS' MOTION TO DISMISS FAC – 7
(No. 2:23-cv-01936)

1    *Revenue*, 171 Wash. 2d 548, 562 (2011) ("[T]here must be facts or circumstances that establish

2    that one person is acting at the instance of and in some material degree under the direction and

3    control of the other.") (cleaned up).[6] None of the other legal categories of fiduciary relationships

4    apply here.

5         Upper Deck's allegations regarding Mr. Miller's "unique . . . specialized expertise" are

6    irrelevant. FAC ¶¶ 75–77. Washington law is clear: "[a] simple reposing of trust and confidence

7    in the integrity of another does not alone make of the latter a fiduciary." *Moon v. Phipps*, 67

8    Wash. 2d 948, 954 (1966); *Micro Enhancement*, 110 Wash. App. at 435 (having trust and

9    confidence in another is not sufficient to create a fiduciary relationship because "[a]fter all, '[w]e

10    trust most people with whom we choose to do business'") (citation omitted).[7]

11         ***Second***, the fiduciary duty claim fails because it is barred by Washington's economic loss

12    rule: "[t]he economic loss rule applies to hold parties to their contract remedies when a loss

13    potentially implicates both tort and contract relief." *Alejandre v. Bull*, 159 Wash. 2d 674, 681

14    (2007). "The rule prohibits plaintiffs from recovering in tort economic losses to which their

15    entitlement flows only from a contract because tort law is not intended to compensate parties for

16    losses suffered as a result of a breach of duties assumed only by agreement." *Id.* at 682 (cleaned

17    up). In other words, "[w]here economic losses occur, recovery is confined to contract[.]" *Id.*; *see*

18    *also Aas v. Superior Ct.*, 24 Cal. 4th 627, 643 (2000) (subsequent history omitted) ("A person

19    may not ordinarily recover in tort for the breach of duties that merely restate contractual

20    obligations.").

21         Here, Upper Deck alleges "Miller breached his fiduciary duty . . . by stealing core

22    concepts and proprietary, novel elements of Upper Deck's game and using it to develop

---

[6] *See also Imagine, Inc. v. CafePress.com, Inc.*, 2011 WL 1322525, at *4 (C.D. Cal. Apr. 6, 2011) ("[An] essential element[] of an agency relationship . . . [is] that the agent . . . holds power to alter legal relations between [the] principal and third persons . . . .").

[7] *Accord City of Hope*, 43 Cal. 4th at 389 ("[A] fiduciary relationship is not necessarily created . . . when one party . . . entrusts a secret invention to another party to develop . . . ."); *Zumbrun v. Univ. of S. Cal.*, 25 Cal. App. 3d 1, 13 (1972).

DEFENDANTS' MOTION TO DISMISS FAC – 8
(No. 2:23-cv-01936)

**Perkins Coie LLP**
505 Howard Street, Suite 1000
San Francisco, California 94105
Phone: +1.415.344.7000
Fax: +1.415.344.7050

1    Lorcana." FAC ¶ 78. This simply restates the allegations of breach of contract. *See id.* ¶ 72

2    ("Miller breached [the Agreements] by . . . copying Upper Deck's proprietary and novel TCG

3    game . . . to develop the Lorcana trading card game."). The alleged fiduciary duty at issue—to

4    maintain the confidentiality of Upper Deck's proprietary information—is an express obligation

5    in the Agreements. Upper Deck's fiduciary duty claim is indistinguishable from the contract

6    claim and thus barred by the economic loss rule. *Alejandre*, 159 Wash. 2d at 681–82; *accord*

7    *Aas*, 24 Cal. 4th at 643.

8        The fiduciary duty claim should be dismissed with prejudice. *See Wilsey v. Oregon Mut.*

9    *Ins.*, 2012 WL 13020083, at *2 (W.D. Wash. Oct. 18, 2012) (dismissal with prejudice where

10   claim was barred by economic loss rule).[8]

11       **C.      The fraud claim should be dismissed.**

12       As a preliminary matter, Upper Deck asserts its fraud claim under California Civil Code

13   sections 1709 and 1710, but it cannot invoke a California statute to raise a claim based on alleged

14   conduct that occurred entirely (or almost entirely) outside of California. *Norwest Mortg., Inc. v.*

15   *Superior Ct.*, 72 Cal. App. 4th 214, 222 (1999) (California courts "do not construe a statute as

16   regulating occurrences outside the state unless a contrary intention is clearly expressed or

17   reasonably can be inferred from the language or purpose of the statute"); *see also* Dkt. No. 29-1

18   (noting California law may be inapplicable because "much of the conduct complained of" took

19   place in Washington).

20       Upper Deck's fraud claim—which alleges fraudulent concealment and misrepresentation,

21   in an apparent attempt to circumvent application of the economic loss rule—also fails as a matter

22   of law.

23

24

25   ────────────────

     [8] *See also BP W. Coast Prods., LLC v. Crossroad Petrol., Inc.*, 2013 WL 12377979, at *10 (S.D.

26   Cal. Dec. 3, 2013); *CleanFuture, Inc. v. Motive Energy, Inc.*, 2019 WL 2896132, at *5 (C.D.
     Cal. Apr. 15, 2019) (dismissal with prejudice where "incurably barred" by economic loss rule).

DEFENDANTS' MOTION TO DISMISS FAC – 9
(No. 2:23-cv-01936)

***Fraudulent Misrepresentation***. To establish a claim for fraudulent misrepresentation under California Civil Code sections 1709 and 1710, Upper Deck must specifically allege, *inter alia*, that: (1) Mr. Miller represented "that an important fact was true;" (2) the "representation was false;" and (3) he knew "the representation was false when [he] made it[.]" *Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 605–06 (2014) (cleaned up).[9] Upper Deck must also satisfy the heightened particularity requirements of Rule 9(b) by identifying "the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Pemberton v. Nationstar Mortg. LLC*, 331 F. Supp. 3d 1018, 1044 (S.D. Cal. 2018) (cleaned up).

Upper Deck falls far short of these requirements. The FAC does not allege *any* specific factual statement by Mr. Miller. The closest it gets is the allegation that "Miller advised Upper Deck's in house gaming employees . . . that he was ending his contract to obtain or find more traditional full-time employment with benefits so he was discontinuing his work as a freelance game designer." FAC ¶ 85. **But Upper Deck does not allege that this statement was false.** Nor could it: Mr. Miller terminated the Agreements and is indisputably a full-time employee of Ravensburger. *Id.* ¶¶ 19, 35, 37; Miller Decl. ¶¶ 3–4. The "misrepresentation" claim should be dismissed with prejudice.

***Fraudulent Concealment***. Upper Deck contends it was defrauded by Miller's "intentional[] conceal[ment]" of certain material facts, namely, that Mr. Miller: (1) discussed possible employment opportunities and accepted employment with Ravensburger; (2) would be working to design a competing game for a competitor; and (3) intended to seize Upper Deck's "confidential and proprietary game" and transfer it to Ravensburger. FAC ¶¶ 83–85, 88. Upper Deck's meandering and incendiary allegations fail to state a claim for relief.

---

[9] The elements of fraudulent misrepresentation or concealment under Washington law are substantially the same, and for the reasons below, Upper Deck's claim would be inadequately pled under Washington law as well. *Carlile v. Harbour Homes, Inc.*, 147 Wash. App. 193, 204–05 (2008).

1    Upper Deck's fraudulent concealment claim fails at the most basic level because Upper

2    Deck does not—*and cannot*—allege that Mr. Miller had a legal duty to disclose *anything* about

3    his future work in the gaming industry. *See Boschma v. Home Loan Ctr., Inc.*, 198 Cal. App. 4th

4    230, 248 (2011) (listing elements of fraudulent concealment including that "the defendant must

5    have been under a duty to disclose the fact to the plaintiff").[10]

6    As a matter of professional courtesy, Mr. Miller explained that he needed to seek full-

7    time employment for financial reasons, which was true. FAC ¶ 85. He had *no legal duty*—

8    contractual, statutory, or otherwise—to disclose potential employers or the obvious fact that any

9    company hiring a game designer would necessarily be operating in the *gaming* space. Upper

10   Deck has not pointed to any contract, statute, or common-law expectation that would obligate

11   Mr. Miller to disclose details of future employment relationships.[11] Nor is it plausible that Upper

12   Deck would be unaware that Mr. Miller might help design a competing game because, after all,

13   Mr. Miller is a *game designer by trade*. Mr. Miller's "specialized skill and expertise" is why

14   Upper Deck retained him in the first place. FAC ¶ 76.

15   More to the point, the Agreements do not contain a non-compete clause, and Upper

16   Deck's attempts to manufacture one is the equivalent of legal alchemy. Mr. Miller had every

17   right to go work for a competitor, like Ravensburger, offering better pay for work on a TCG.

18   That Upper Deck would sue Mr. Miller simply because he—like virtually every other employee

19   or contractor in the country—dared to look for other employment opportunities says the quiet

20   part out loud: this is about squelching competition and intimidating current- and former-

21   employees.

22   Upper Deck also fails to allege with the requisite particularity that it "would not have

23   acted as he did if he had known of the concealed or suppressed fact." *Boschma*, 198 Cal. App.

---

[10] *See also August v. U.S. Bancorp*, 146 Wash. App. 328, 347 (2008) (identifying substantially similar elements under Washington law).

[11] Nor can it—Upper Deck itself had a "confidential business relationship" with Mr. Miller. *See* Miller Decl. Ex. 1, at 8 (Summit Agreement § 7).

DEFENDANTS' MOTION TO DISMISS FAC – 11
(No. 2:23-cv-01936)

**Perkins Coie LLP**
505 Howard Street, Suite 1000
San Francisco, California 94105
Phone: +1.415.344.7000
Fax: +1.415.344.7050

4th at 248. To the contrary, the facts alleged in the FAC contradict Upper Deck's conclusory allegations of purported reliance. Upper Deck claims it would have sought the return of confidential information and/or prevented its employees from communicating with Mr. Miller if it was aware of his employment at Ravensburger and the company's work on a competing TCG. FAC ¶ 90. But Upper Deck *was aware* of Mr. Miller's employment with Ravensburger and work on Lorcana when the game was announced in September 2022—and Upper Deck did nothing. *See* FAC ¶¶ 41–42. Upper Deck cannot now lament that it was damaged by its own inaction.

Additionally, the fraudulent concealment claim is barred by the economic loss rule. Upper Deck again seeks to recover purely economic losses in tort—lost profits and opportunities resulting from the earlier release of a competing TCG (FAC ¶ 92)—for harms caused by the alleged breach of contract. *Compare id.* ¶ 88, *with id.* ¶ 72 and Miller Decl. Ex. 1, at 8 (Summit Agreement § 7). Upper Deck's failure to "demonstrate harm above and beyond a broken contractual promise" is fatal to its claim. *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004); *see also Cho v. Hyundai Motor Co.*, 636 F. Supp. 3d 1149, 1162 (C.D. Cal. 2022) (dismissing fraudulent concealment claim with prejudice because it was barred by the economic loss rule).

The fraudulent concealment claim should be dismissed with prejudice.

### D. The claim for inducing breach of contract should be dismissed.

To raise a claim for inducing breach of a written contract, Upper Deck must plead and prove: (1) the existence of a valid contractual relationship between the plaintiff and a third party; (2) the defendant's knowledge of that contractual relationship; (3) the defendant's intentional interference inducing or causing a breach or termination of the contractual relationship; and (5) resulting damage. *See Roil Energy, LLC v. Edington*, 2016 WL 4132471, at *9 (Wash. Ct. App. Aug. 2, 2016) (unpublished).[12] Upper Deck fails to plead at least two elements.

---

[12] The elements under California law are substantially similar: (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract;

DEFENDANTS' MOTION TO DISMISS FAC – 12
(No. 2:23-cv-01936)

**Perkins Coie LLP**
505 Howard Street, Suite 1000
San Francisco, California 94105
Phone: +1.415.344.7000
Fax: +1.415.344.7050

*First*, Upper Deck does not plausibly allege Ravensburger's actual knowledge of any specific contract between Upper Deck and Mr. Miller. Upper Deck alleges "Ravensburger knew or reasonably should have known Miller was subject to valid confidentiality contracts[.]" FAC ¶ 97. But that allegation does not identify a contract, much less point to the Agreements at issue in this action (in fact, Upper Deck *still* has not attached the actual Agreements to its pleadings).

Upper Deck attempts to impute knowledge to Ravensburger by describing hiring processes that "a reasonably prudent employer" would undertake. *Id.* But Upper Deck does not allege that Ravensburger used any of the listed processes. *Id.* Even if it did, none of the enumerated processes plausibly support the inference that Ravensburger was aware of a specific contract. *Id.* At most, the listed processes would protect against a problematic disclosure by reminding a new hire of their preexisting confidentiality obligations. E.g., *id.* ¶ 97(a)–(d). And it is not plausible that a "reasonably prudent employer" would implement a policy that would require its new hires to violate preexisting confidentiality obligations by disclosing the existence of a specific agreement. *Compare id.* ¶ 97(e), *with* Miller Decl. Ex. 2, at 16 (Shell Beach Agreement § 10) ("Designer agrees not to reveal the Confidential Information [defined to include the Shell Beach Agreement] to any third party[.]").

Additionally, Upper Deck's far-fetched "should have known" theory has no limiting principle; if it were accepted, knowledge of unidentified contracts could be vaguely imputed to any employer. The Court should not accept "unwarranted deductions of fact, or unreasonable inferences." *Sprewell*, 266 F.3d at 988.

Implausibility aside, the "should have known" theory fails as a matter of law because this tort requires actual knowledge. *N.Y. Studio, Inc. v. Better Bus. Bureau of Alaska, Or., & W. Wash.*, 2011 WL 2414452, at *7 (W.D. Wash. June 13, 2011) (dismissing claim because, *inter*

---

(3) the defendant's intentional acts designed to induce a breach; (4) actual breach; and (5) resulting damage. *See Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*, 521 F. Supp. 3d 929, 961 (S.D. Cal. 2021).

**Perkins Coie LLP**
505 Howard Street, Suite 1000
San Francisco, California 94105
Phone: +1.415.344.7000
Fax: +1.415.344.7050

*alia*, it was "unclear" whether the defendant "had any knowledge" of plaintiff's contractual relationships); *see also* Restatement (Second) of Torts § 766 cmt. i (Am. L. Inst. 1979) ("To be subject to liability [for inducing a breach of contract], the actor must have knowledge of the contract with which he is interfering and of the fact he is interfering with the performance of the contract."). That should be the end of the matter.

**Second**, Upper Deck has not pled conduct *by Ravensburger* designed to induce any breach. Upper Deck alleges in a conclusory manner that "Ravensburger induced and intended for Miller to breach his obligations[.]" FAC ¶ 100. That's it. There are *no allegations* about what Ravensburger actually *did* to induce Miller's supposed breach of contract.

If Upper Deck's theory of liability is based on Ravensburger's "hiring Miller away from Upper Deck," *see* FAC ¶ 101, it cannot stand because hiring someone is not wrongful. *Birkenwald Distrib. Co. v. Heublein, Inc.*, 55 Wash. App. 1, 12, (1989) ("Asserting one's rights to maximize economic interests does not create an inference of ill will or improper purpose."); *see also Organo Gold Int'l, Inc. v. Ventura*, 2016 WL 1756636, at *9 (W.D. Wash. May 3, 2016) (finding no improper purpose or motive where competitor-defendant solicited plaintiff's distributors to become its distributors); *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1148 (2020) ("[T]o state a claim for interference with an at-will contract by a third party, the plaintiff must allege that the defendant engaged in an independently wrongful act."). Even if Ravensburger *asked* Mr. Miller to terminate his freelance project with Upper Deck, that would not be actionable, either. *See Island Air, Inc. v. LaBar*, 18 Wash. App. 129, 142 (1977) (an actor is privileged to purposefully cause a third person not to "continue a business relation with a competitor" if "the actor's purpose is at least in part to advance his interest in his competition with the other"). This claim should be dismissed with prejudice.

**Perkins Coie LLP**
505 Howard Street, Suite 1000
San Francisco, California 94105
Phone: +1.415.344.7000
Fax: +1.415.344.7050

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**E.    The intentional interference with prospective economic relations claim should be dismissed.**

To state a claim for intentional interference with prospective economic relations, Upper Deck must allege: "(1) the existence of a valid . . . business expectancy; (2) that defendants had knowledge of that [expectancy]; (3) an intentional interference inducing or causing a breach or termination of the . . . expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage." *Life Designs Ranch, Inc. v. Sommer*, 191 Wash. App. 320, 337 (2015).[13] Upper Deck fails to plausibly allege several elements.

***First***, Upper Deck does not allege any intentional act by Ravensburger that interfered with Upper Deck's relations with Mr. Miller for an improper purpose or by using improper means. "To be improper, interference must be wrongful by some measure beyond the fact of the interference itself  . . . ." *Moore v. Com. Aircraft Interiors, LLC*, 168 Wash. App. 502, 510 (2012). "This requires demonstrating not only that the [defendant] interfered, but that the [defendant] had a duty to not interfere." *Libera v. City of Port Angeles*, 178 Wash. App. 669, 676 (2013). Upper Deck falls far short of this standard. The FAC simply asserts that "Ravensburger hired Miller away from Upper Deck . . . [which] resulted in termination of the Upper Deck-Miller contracts and a disruption in Upper Deck's development of the Rush of Ikorr game." FAC ¶¶ 108–09. But the mere "hiring away" of an "employee" from one company to another—especially where, as here, there is no non-compete provision in the governing Agreements—is not independently wrongful conduct. *Birkenwald Distrib. Co.*, 55 Wash. App. at 11 ("[w]hen one acts to promote lawful economic interests, bad motive is essential, and incidental interference will not suffice" to sustain a claim for tortious interference).

---

[13] Again, there is no conflict between a claim for tortious interference with business expectancy under Washington law and a claim intentional interference with prospective economic relations under California law. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003) (listing elements of intentional interference with prospective economic relations).

**Perkins Coie LLP**
505 Howard Street, Suite 1000
San Francisco, California 94105
Phone: +1.415.344.7000
Fax: +1.415.344.7050

1    **Second**, and relatedly, if Upper Deck's claim is instead that its relationship with

2    Mr. Miller was disrupted by Ravensburger's alleged "use [of] confidential, proprietary drafts and

3    other work product . . . to develop the competing Lorcana game," (FAC ¶ 108), it still fails. An

4    intentional interference claim is preempted, where, as here, the alleged wrongful act is based on

5    copyright infringement. *See Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir.

6    2008); *compare* FAC ¶¶ 108, 110, *with id.* ¶ 116.

7    **Third**, Upper Deck fails to show that it suffered any pecuniary losses that would have

8    been realized but for Ravensburger's interference. *See Tamosaitis v. Bechtel Nat'l, Inc.*, 182

9    Wash. App. 241, 252 (2014) ("[i]in the absence of any pecuniary loss," speculative and

10   reputational harm "are not recoverable under this tort"); *accord Soil Retention Prods.*, 521 F.

11   Supp. 3d at 961 ("[A] hope of future transactions is insufficient to support a claim of tortious

12   interference."). Here, Upper Deck concedes Rush of Ikorr is "still-in-progress," i.e., the game has

13   not been "publicly announced or launched[.]" FAC ¶¶ 22, 39. As such, Upper Deck has nothing

14   but a hope that the game will be completed and launched, much less that sales of the game will

15   result in economic benefit to Upper Deck. This is insufficient as a matter of law. *See Tamosaitis*,

16   182 Wash. App. at 252; *Soil Retention Prods.*, 521 F. Supp. 3d at 961–62.

17   **Finally**, the interference claim relies on conclusory allegations about Ravensburger's

18   knowledge of Upper Deck's contractual relationship with Mr. Miller. *See, e.g.*, FAC ¶ 107; *id.* ¶¶

19   97–98. But "[w]ithout facts supporting an inference that [defendant] specifically intended to

20   interfere with [plaintiff's] business interests or that [defendant] did anything other than exercise

21   legitimate legal rights in good faith, the claim must be dismissed." *State Farm Mut. Auto. Ins. v.*

22   *Peter J. Hanson, P.C.*, 2017 WL 1304445, at *4 (W.D. Wash. Feb. 3, 2017); *accord Soil*

23   *Retention Prods.*, 521 F. Supp. 3d at 960. Conclusory and "[t]hreadbare recitals of the elements

24   of a cause of action" alone do not suffice. *Iqbal*, 556 U.S. at 678.

25   The interference claim must be dismissed with prejudice.

26

DEFENDANTS' MOTION TO DISMISS FAC – 16
(No. 2:23-cv-01936)

1

**F.      Upper Deck's copyright claims fail as a matter of law.**

2      To establish copyright infringement, Upper Deck must plead ownership of a valid

3  copyright and copying of constituent elements of the protected work. *Rentmeester v. Nike, Inc.*,

4  883 F.3d 1111, 1116–17 (9th Cir. 2018), *overruled on other grounds by Skidmore ex rel. Randy*

5  *Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020). Upper Deck cannot meet this

6  burden because the material allegedly copied—game mechanics and functional characteristics—

7  is not protected by copyright law. The copyright claim is a distraction and Defendants intend to

8  seek attorneys' fees under 17 U.S.C. § 505.

9      As an initial matter, Upper Deck does not coherently or plausibly allege that its

10  *unidentified* copyrighted material is "substantially similar" to Ravensburger's game. *See*

11  *Rentmeester*, 883 F.3d at 1116–23; FAC ¶ 114. Upper Deck identifies two registrations, each

12  bearing a Visual Arts Unpublished ("**VAU**") descriptor, but Upper Deck does not describe the

13  allegedly protected material or attach registration materials and has refused to send the materials

14  to Defendants. *See* FAC ¶¶ 114–17; *see also* Perez Decl. ¶ 2. Keeping this claim vague and

15  murky—including by refusing to attach or even send Defendants the actual copyright

16  registrations—is a *feature*, not a bug: Upper Deck wants to obscure that the elements of Rush of

17  Ikorr described in the FAC (game mechanics) are not "pictorial, graphic, or sculptural works" to

18  which a visual arts copyright applies. U.S. Copyright Office, Form VA (revised May 2019)

19  https://www.copyright.gov/forms/formva.pdf.[14] Or more plausibly, perhaps the game mechanics

20  described in the FAC were not part of Upper Deck's submission to the Copyright Office, and are

21  not covered by the claimed copyrights. Indeed, Upper Deck's allegations regarding what was

22  allegedly "stolen" (game mechanics) are inconsistent with its copyright registrations for "text, 2-

23  D artwork." *Compare* Perez Decl. Exs. A–B (registration records), *with* FAC ¶¶ 44–68, 116–18.

24

25  [14] These registrations are incorporated by reference in the FAC, and are also judicially
26  noticeable. *See supra* note 3; *see also Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011,
   1033 (C.D. Cal. 2015).

DEFENDANTS' MOTION TO DISMISS FAC – 17
(No. 2:23-cv-01936)

1    Notably, the FAC does not contain any images of Rush of Ikorr cards, or text quoted

2    from a card. ***Upper Deck does not even describe a particular card, just general functions***. *See*

3    FAC at 25:18–20. Upper Deck may well have a copyright on the "pictorial" or "graphic"

4    portions of its game, but Upper Deck does not allege a single "pictorial," "graphic," or any other

5    protectable expression that is "substantially similar" to anything in Lorcana. Nothing. In effect,

6    Upper Deck's copyright claim is the legal equivalent of an ellipsis.

7    In any event, Upper Deck identifies two categories of allegedly copied material: "game

8    effects" and "characters." FAC ¶ 116. But the Copyright Act does not protect game rules,

9    procedures, functions, winning conditions, or other game mechanics. *See* 17 U.S.C. § 102(b)

10   (copyright protection does not extend to "any idea, procedure, process, system, method of

11   operation, concept, principle . . . regardless of the form in which it is described, explained,

12   illustrated, or embodied in such work"); *DaVinci Editrice S.R.L. v. ZiKo Games, LLC*, 183 F.

13   Supp. 3d 820, 828–31 (S.D. Tex. 2016) ("Ziko Games") (finding non-infringement because the

14   only similarities between two card games were not copyrightable), *judgment entered*, 2016 WL

15   1718825 (S.D. Tex. Apr. 27, 2016); 1 *Nimmer on Copyright* § 2A.14 (2023) ("[N]o copyright

16   may be obtained in the system or manner of playing a game . . . ."); U.S. Copyright Office,

17   *Compendium of U.S. Copyright Office Practices* § 714 Games (3d ed. 2021) ("[C]opyright does

18   not protect the idea for a game, the name or title of a game, or the procedure, process, or method

19   of operation for playing a game.").

20   Upper Deck's "game effects" and character traits are basic game mechanics that the

21   Copyright Act does not protect. For example, Upper Deck claims protection for its character

22   "Charge or Sneak Attack: This creature may attack the turn you summon it." FAC ¶ 116(a). But

23   in *ZiKo Games*, the court found a card game character's ability to strike opponents from a longer

24   distance was the same type of unprotected expression as the ability of a rook to move across the

25   chess board in one move. 183 F. Supp. 3d at 833–34; *see also Atari, Inc. v. N. Am. Philips*

26   *Consumer Elecs. Corp.*, 672 F.2d 607, 610 (7th Cir. 1982) (subsequent history omitted) (finding

1   PAC-MAN gameplay, i.e., eating dots in a maze while being chased, was not protectable).

2          Other alleged "similarities" between Rush of Ikorr and Lorcana, e.g., the "standalone

3   pseudo-discard pile where players accumulate resources needed to bring cards into play," FAC ¶

4   116(b), are functional choices inherent in the game and not copyrightable. *Spry Fox LLC v.*

5   *LOLApps Inc.*, 2012 WL 5290158, at *6 (W.D. Wash. Sept. 18, 2012) (choices of a 6x6 game

6   grid or limits on how many advantages a player can purchase in a game's marketplace are

7   functional choices beyond the scope of copyright protection).

8          Upper Deck's other game mechanics are not protectable because they are "*scenes a*

9   *faire*," i.e., standard operations in the expression of an idea or the implementation of a game.

10  *Spry Fox*, 2012 WL 5290158, at *4. Upper Deck complains that Lorcana's collection of Lore

11  copies Rush of Ikorr's gem-based "win currency." FAC ¶¶ 55, 67. But "the use of points [or

12  coins, gems, or Lore] to reward a player's progress through a game is standard" and not

13  protectable. *Spry Fox*, 2012 WL 5290158, at *5.

14         Nor can Upper Deck claim copyright protection over its "characters." *See* FAC ¶ 116(a).

15  A character is only copyrightable if it (1) has "physical as well as conceptual qualities," (2) is

16  "recognizable as the same character whenever it appears" and "display[s] consistent, identifiable

17  character traits and attributes," and (3) is "especially distinctive" and "contain[s] some unique

18  elements of expression." *Daniels v. Walt Disney Co.*, 958 F.3d 767, 771 (9th Cir. 2020)

19  (dismissing claim against Disney's movie *Inside Out* because plaintiff's five color-coded

20  humanlike emotions characters were not copyrightable); *DC Comics v. Towle*, 802 F.3d 1012,

21  1019 (9th Cir. 2015) (Batmobile is a copyrightable character). None of the "characters"

22  described in the FAC come close to meeting this standard. Again, the vagueness is deliberate

23  because Upper Deck does not describe *a single character* by name or function.

24         Finally, Upper Deck's vicarious infringement claim must also be dismissed because there

25  is no direct infringement. *See A & M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th

26  Cir. 2001), *aff'd*, 284 F.3d 1091 (9th Cir. 2002).

DEFENDANTS' MOTION TO DISMISS FAC – 19
(No. 2:23-cv-01936)

**Perkins Coie LLP**
505 Howard Street, Suite 1000
San Francisco, California 94105
Phone: +1.415.344.7000
Fax: +1.415.344.7050

1

**G.    The conversion claim should be dismissed.**

2   To raise a claim for conversion, Upper Deck must allege: "(1) willful interference with

3   chattel belonging to the plaintiff, (2) by either taking or unlawful retention, and (3) thereby

4   depriving the owner of possession." *Burton v. City of Spokane*, 16 Wash. App. 2d 769, 773

5   (2021).[15] Upper Deck's conversion claim fails for multiple independent reasons.

6   ***First***, the crux of Upper Deck's conversion claim appears to be that Defendants

7   converted Upper Deck's ideas for Rush of Ikorr—i.e., its structure, gameplay, and mechanics.

8   FAC ¶ 120. But Washington law is clear: conversion requires the taking or unlawful retention of

9   *chattel*—mere *ideas* are not subject to conversion. *See Burton*, 16 Wash. App. 2d at 773. Upper

10   Deck does not allege, as required, that any chattel (i.e., tangible property) was converted.

11   ***Second***, the conversion claim against Mr. Miller is barred by the economic loss rule. *See*

12   *Alejandre*, 159 Wash. 2d at 682 ("The rule prohibits plaintiffs from recovering in tort economic

13   losses to which their entitlement flows only from a contract . . . .") (cleaned up); *Eastwood v.*

14   *Horse Harbor Found., Inc.*, 170 Wash. 2d 380, 389 (2010) (an injury is only remediable in tort

15   "if it traces back to the breach of a tort duty arising independently of the terms of the contract").

16   The allegedly converted property interest—"design . . . concepts, and mechanics . . . for Rush of

17   Ikorr"—is covered by the prohibitions on use and disclosure of confidential information in the

18   Agreements. *Compare* FAC ¶ 120, *with id.* ¶ 70, and Miller Decl. Ex. 2, at 16 (Shell Beach

19   Agreement § 10).

20   ***Third***, the conversion claim is preempted by the Copyright Act (if the copyright claim

21   can even survive) because it seeks damages, not the return of tangible property. *CD L., Inc. v.*

22   *LawWorks, Inc.*, 1994 WL 840929, at *3 (W.D. Wash. Dec. 21, 1994) (claims premised on

23   misappropriation of information are "part and parcel of the copyright claim, and hence are

24

25   [15] Under California law, a claim for conversion similarly requires: (1) "ownership or right to possession of a certain piece of property; (2) the defendant's conversion of the property by a
26   wrongful act or disposition of property rights; and (3) damages." *Counts v. Meriwether*, 2015 WL 12656945, at *5 (C.D. Cal. June 12, 2015).

DEFENDANTS' MOTION TO DISMISS FAC – 20
(No. 2:23-cv-01936)

1  preempted") (cleaned up); *Yellowcake, Inc. v. Morena Music, Inc.*, 522 F. Supp. 3d 747, 775

2  (E.D. Cal. 2021); FAC ¶¶ 123–24.

3      **H.    The unfair competition claim fails as a matter of law.**

4      California's unfair competition law ("UCL") "prohibits, and provides civil remedies for,

5  unfair competition, which it defines as 'any unlawful, unfair or fraudulent business act or

6  practice.'" *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 320 (2011). Upper Deck's UCL claim

7  suffers from several fatal flaws, each independently warranting dismissal under Rule 12(b)(6).

8      ***First***, Upper Deck does not specify which prong of the UCL its claim relies upon. FAC

9  ¶¶ 125–29. "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must identify the

10  prong(s) underlying its unfair competition claim." *United States ex rel. Integrated Energy, LLC*

11  *v. Siemens Gov't Techs., Inc.*, 2016 WL 11743176, at *5 (C.D. Cal. June 13, 2016). Upper

12  Deck's failure to specify "deprives [Defendants] of fair notice of the claims" alleged against

13  them, warranting dismissal. *Nuvo Rsch. Inc. v. McGrath*, 2012 WL 1965870, at *6 (N.D. Cal.

14  May 31, 2012) (cleaned up).

15      ***Second***, Upper Deck seeks to recover "disgorgement of . . . revenue and income earned

16  by Ravensburger[,]" an admitted "direct competitor." FAC ¶ 129; *id.* ¶¶ 1, 20, 72. Upper Deck's

17  alleged harms include "lost sales, loss of goodwill . . . thwarting the Rush of Ikorr launch, loss of

18  related revenue streams, [and] loss of capital[.]" *Id.* ¶ 103; *see also id.* ¶ 92. But it is settled that

19  the relief Upper Deck seeks from Ravensburger is not recoverable under the UCL. *See Dyson,*

20  *Inc. v. Garry Vacuum, LLC*, 2010 WL 11595882, at *8 (C.D. Cal. July 19, 2010) (citing cases);

21  *see also Korea Supply Co.*, 29 Cal. 4th at 1152. The UCL claim against Ravensburger should be

22  dismissed.

23      ***Third***, a UCL claim is preempted, where, as here, it is "based on rights granted by the

24  Copyright Act." *Crafty Prods., Inc. v. Michaels Cos.*, 389 F. Supp. 3d 876, 887 (S.D. Cal. 2019);

25  *compare* FAC ¶ 126 (alleging Defendants "used and disseminated Upper Deck's confidential and

26  proprietary game design . . . [on] Lorcana"), *with id.* ¶ 116 (alleging Lorcana copied protected

DEFENDANTS' MOTION TO DISMISS FAC – 21
(No. 2:23-cv-01936)

**Perkins Coie LLP**
505 Howard Street, Suite 1000
San Francisco, California 94105
Phone: +1.415.344.7000
Fax: +1.415.344.7050

1    aspects of Upper Deck's Game Designs). Dismissal is proper on this basis as well.

2    **IV.    Conclusion**

3         For the foregoing reasons, Defendants respectfully request that the Court grant Defendants'

4    motion to dismiss for failure to state a claim.

5

6                          **LCR 7(e)(6) CERTIFICATION**

7    I certify that this memorandum contains 7,559 words, in compliance with the Local Civil Rules.

8

9    Dated: January 18, 2024                    By: s/ David A. Perez
                                                    _____
10                                                  David A. Perez, Bar No. 43959
                                                    Christian W. Marcelo, Bar No. 51193
11                                                  Heath L. Hyatt, Bar No. 54141
                                                    **Perkins Coie LLP**
12                                                  1201 Third Avenue, Suite 4900
                                                    Seattle, Washington 98101-3099
13                                                  Telephone: +1.206.359.8000
                                                    Facsimile: +1.206.359.9000
14                                                  DPerez@perkinscoie.com
                                                    CMarcelo@perkinscoie.com
15                                                  HHyatt@perkinscoie.com

16                                                  Alisha C. Burgin (*admitted pro hac vice*)
                                                    **Perkins Coie LLP**
17                                                  1888 Century Park East, Suite 1700
                                                    Los Angeles, California 90067-1721
18                                                  Telephone: +1.310.788.9900
                                                    Facsimile: +1.310.788.3399
19                                                  ABurgin@perkinscoie.com

20                                                  Torryn T. Rodgers (*admitted pro hac vice*)
                                                    **Perkins Coie LLP**
21                                                  505 Howard Street, Suite 1000
                                                    San Francisco, California 94105
22                                                  Telephone: +1.415.344.7000
                                                    Facsimile: +1.415.344.7050
23                                                  TRodgers@perkinscoie.com

24                                                  *Attorneys for Defendants*
                                                    *RYAN MILLER and RAVENSBURGER NORTH*
25                                                  *AMERICA, INC.*

26

DEFENDANTS' MOTION TO DISMISS FAC – 22
(No. 2:23-cv-01936)

**Perkins Coie LLP**
505 Howard Street, Suite 1000
San Francisco, California 94105
Phone: +1.415.344.7000
Fax: +1.415.344.7050

1

2

**CERTIFICATE OF SERVICE**

3

I certify under penalty of perjury that on January 18, 2024, I caused to be electronically

4

filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will

5

send a notification of the filing to the email addresses indicated on the Court's Electronic Mail

6

Notice List and also sent via email to the following email addresses:

7

cnicholas@nicholaslaw.org; jbelcastro@nicholaslaw.org; smarkely@nicholaslaw.org

8

Dated: January 18, 2024

9

s/ David A. Perez

David A. Perez

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE
(No. 2:23-cv-01936)