1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

THE UPPER DECK COMPANY,

              Plaintiff,

   v.

RYAN MILLER et al.,

              Defendants.

CASE NO. C23-1936-KKE

ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO
DISMISS

This is a copyright infringement and breach of contract case. Plaintiff Upper Deck Company ("Upper Deck") claims that Defendant Ryan Miller, a former contractor working on the trading card game "Rush of Ikorr," took a job with competitor, Defendant Ravensburger North America Inc. ("Ravensburger"), and used Upper Deck's confidential and copyrighted material in Ravensburger's "Disney Lorcana" trading card game. Defendants move to dismiss every claim except for the breach of contract claim against Miller, arguing the economic loss rule bars tort claims against Miller, the claims against Ravensburger omit required elements, the state law claims are preempted by the Copyright Act, and Upper Deck fails to identify any copyrighted material. Except for the conversion, copyright, and parts of the fraud claim, the Court agrees with Defendants but finds many of these failures can be cured by amendment.

### I.    BACKGROUND[1]

In 2018, Miller entered into an agreement ("2018 Agreement") with Upper Deck wherein Miller would attend a gaming summit to brainstorm and provide feedback on new games and game mechanics.  Dkt. No. 12 ¶ 26, Dkt. No. 48 at 7–11.  Rush of Ikorr[2] was created at this gaming summit.  Dkt. No. 12 ¶ 28.  In 2019, Miller entered into another agreement with Upper Deck ("2019 Agreement") wherein Miller would be the lead game designer for Rush of Ikorr and would be paid upon completion of specific milestones, with a timeline running through March 2021. *Id.* ¶ 30.  In October 2020, Miller terminated the 2019 Agreement and, around that time, began working with Ravensburger.  *Id.* ¶¶ 35, 37.  In September 2022, Ravensburger announced the Disney Lorcana game and identified Miller as the "product manager and co-designer" of the game. *Id.* ¶ 41.

In June 2023, Upper Deck filed this case against Defendants in San Diego Superior Court and Defendants removed the case to the Southern District of California.  Dkt. No. 1.  In July 2023, Upper Deck filed its amended complaint, which is the operative complaint.  Dkt. No. 12.  The complaint brings three causes of action against Miller (breach of contract, breach of fiduciary duty, and fraudulent misrepresentation and/or fraudulent concealment under Cal. Civ. Code §§ 1709–10), two causes of action against Ravensburger (inducing breach of a written contract, and intentional interference with prospective economic relations), and three causes of action against both Defendants (copyright infringement, conversion, and unfair competition under Bus. & Profs. Code § 17200).  *Id.*  Defendants moved to dismiss the complaint for lack of personal jurisdiction and failure to state a claim.  Dkt. No. 20.  After full briefing on Defendants' motion to dismiss for

---

[1] This section assumes, for purposes of resolving the motion to dismiss, that the factual allegations in the first amended complaint (Dkt. No. 12) are true.

[2] The game was previously called Shell Beach.  Dkt. No. 12 ¶ 29.

1  lack of personal jurisdiction, and limited jurisdictional discovery, Judge M. James Lorenz

2  transferred the case to this Court under 28 U.S.C. § 1404(a) and denied the remainder of the motion

3  to dismiss as moot.  Dkt. No. 29-1.  After the transfer, Defendants filed this motion to dismiss for

4  failure to state a claim on all causes of action except the breach of contract claim against Miller.

5  Dkt. No. 46.  The Court has considered the parties' briefing and for the reasons explained below,

6  the Court grants in part and denies in part the motion to dismiss.

## II.   ANALYSIS

**A.    This Court Has Subject Matter Jurisdiction.**

This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because complete diversity exists between the parties and the amount in controversy exceeds $75,000.  Dkt. No. 1. Upper Deck is a citizen of Nevada and California.  Dkt. No. 12 ¶ 18.  And Ravensburger and Miller are citizens of Washington.  *Id.* ¶¶ 19, 20.  Based on the harms alleged in the complaint, the amount in controversy exceeds $75,000.  *Id.* ¶¶ 73, 103; Dkt. No. 1 ¶¶ 11–22.

The Court also has federal question subject matter jurisdiction over the copyright claim under 28 U.S.C. § 1331.

**B.    The Court Will Apply California Law to the State Law Claims.**

The parties dispute whether Washington or California law applies to the state law claims after the transfer under 28 U.S.C. § 1404(a).  Upper Deck argues California law applies because, following a transfer under 28 U.S.C. § 1404(a), the Court "must 'apply the state law, including the choice-of-law rules, of the original transferor court.'"  Dkt. No. 54 at 9 (quoting *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 69 F.4th 665, 674 (9th Cir. 2023)).  Defendants posit that this general rule does not apply because the transferor court, the Southern District of California, did not have personal jurisdiction over Defendants.  Dkt. No. 46 at 13–14.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

While the transfer order did not explicitly say it had personal jurisdiction over Defendants, it implicitly so found when it stated, "[i]f transferred, the transferee Court would have to apply California choice-of-law rules to determine the governing law for the non-statutory claims and apply California law for the statutory claims." Dkt. No. 29-1 at 8.  Indeed, this Court would only apply California choice-of-law rules if the Southern District of California had personal jurisdiction, otherwise, the Court would apply Washington choice-of-law rules.  *See* 15 Charles Alan Wright et al., *Federal Practice and Procedure* § 3846 (4th ed. 2018) ("[W]hen transfer of a diversity of citizenship case is ordered under Section 1404(a) from a court with personal jurisdiction, *Van Dusen*[3] requires the transferee district to apply the choice-of-law rules of the state in which the transferor court sat.").  Defendants do not explain why this statement in the transfer order, that could only be true if the transferring court had personal jurisdiction, should be ignored.  Because the Southern District of California implicitly found it had personal jurisdiction over Defendants, this Court must use California choice-of-law rules to determine what law applies to each claim.

Defendants do not argue that if California's choice-of-law rules govern, Washington law should apply.[4]  Accordingly, the Court will assume that since California is the forum where the claim was filed, California substantive law applies to each state law claim.  *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 561 (9th Cir. 2019) ("By default, California courts apply California law unless a party litigant timely invokes the law of a foreign state, in which case it is the foreign law proponent who must shoulder the burden of demonstrating that foreign law, rather than California law, should apply.").  This Court will therefore apply California substantive law to the state law claims and Ninth Circuit law to the copyright claim.

---

[3] *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964).

[4] Instead, in reply, Defendants state "there does not appear to be any meaningful difference between California and Washington law with respect to the claims in this case[.]"  Dkt. No. 55 at 7.

1

**C.      The Court Will Consider Limited Extrinsic Evidence.**

2

On a motion to dismiss, district courts can typically only consider the pleadings "when

3

assessing the sufficiency of a complaint." *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988,

4

998 (9th Cir. 2018). However, the district court has discretion to consider extrinsic evidence under

5

the incorporation-by-reference doctrine and by judicial notice under Federal Rule of Evidence 201.

6

*Id.*

7

Defendants ask the Court to consider the following extrinsic evidence: the declaration of

8

Ravensburger's International Category Director (Dkt. No. 47 at 1–2), an online article announcing

9

the Disney Lorcana game (*id.* at 6–8), the Disney Lorcana game rules (Dkt. No. 46 at 12), the

10

declaration of Miller (Dkt. No. 48 at 1–3), the 2018 Agreement (*id.* at 7–11), the 2019 Agreement

11

(*id.* at 13–21), and two copyright registrations (Dkt. No. 49 at 4–7).

12

The only relevant and necessary extrinsic evidence that the Court will consider is the two

13

copyright registrations and the two agreements. The copyright registrations are proper subjects of

14

judicial notice. *See Idema v. Dreamworks*, Inc., 90 F. App'x 496, 498 (9th Cir. 2003), *as amended

15

on denial of reh'g* (Mar. 9, 2004) (describing a copyright registration as "the sort of [document]

16

as to which judicial notice is appropriate"); *Laatz v. Zazzle, Inc*., No. 22-cv-04844-BLF, 2024 WL

17

1023849, at *3 (N.D. Cal. Mar. 7, 2024) ("It is common practice for courts to take judicial notice

18

of copyright registrations and applications."). And, as both parties agree (Dkt. No. 46 at 11 n.2,

19

Dkt. No. 54 at 14), the 2018 and 2019 Agreements are incorporated by reference in the complaint.

20

*See Vesta Corp. v. Amdocs Mgmt. Ltd*., 80 F. Supp. 3d 1152, 1157 (D. Or. 2015) (incorporating

21

nondisclosure agreement contracts by reference when they are "referred to extensively in the

22

Complaint and are the basis of [a] breach of contract claim.").

23

**D.      Legal Standard for Motions to Dismiss**

24

Dismissal under Federal Rule of Civil Procedure 12(b)(6) may be based on either the lack

of a cognizable legal theory or the "absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (cleaned up).  At this stage, the Court accepts as true all factual allegations in the complaint and construes them in the light most favorable to the nonmoving party.  *Gonzalez v. Google LLC*, 2 F.4th 871, 885 (9th Cir. 2021), *rev'd on other grounds by Gonzalez v. Google LLC*, 143 S. Ct. 1191 (2023) (per curiam).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see* Fed. R. Civ. P. 8(a)(2) (a plaintiff must make a "short and plain statement of the claim showing that the pleader is entitled to relief").  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "If a motion to dismiss is granted, a court should normally grant leave to amend unless it determines that the pleading could not possibly be cured by allegations of other facts."  *Chinatown Neighborhood Ass'n v. Harris*, 33 F. Supp. 3d 1085, 1093 (N.D. Cal. 2014).

Defendants move to dismiss each of Upper Deck's claims, except for the breach of contract claim against Miller.  Defendants posit multiple, and sometimes overlapping, reasons to dismiss each cause of action.  For clarity, this order is organized as follows.  First, the Court will address the parties' recurring argument about whether the economic loss rule applies to Miller's contract here.  Then the Court will address each cause of action.

## E.    The Economic Loss Rule is Generally Applicable to Claims Against Miller Arising from the Contract.

Defendants argue the economic loss rule bars Upper Deck's claims against Miller for breach of fiduciary duty, fraudulent concealment, and conversion.  Dkt. No. 46 at 16–17, 20, 28.

1    Upper Deck argues the economic loss rule cannot apply here because the contract was not for the

2    sale of goods or products.  Dkt. No. 54. at 12–13.  Upper Deck is incorrect.

3          The contractual economic loss rule bars tort claims for monetary damages when the parties

4    have entered a contract and the claims arise from that contract.  *Sheen v. Wells Fargo Bank, N.A.*,

5    505 P.3d 625, 633 (Cal. 2022), *reh'g denied* (June 1, 2022).  As the California Supreme Court

6    explained in *Sheen*, the assumption is that the economic loss rule can apply to tort claims that arise

7    from all contract-types and that there are limited circumstances, like contracts for professional

8    services or insurance, that are exceptions to the rule.  *Id.* at 632–634, 637–640 (explaining why the

9    economic loss rule applies in the mortgage context and why the limited exceptions to the rule are

10   "inapposite").  Thus, contrary to Upper Deck's claim, the economic loss rule does not apply only

11   to contracts for goods or services.

12         Upper Deck also argues this case should fall into the professional services exception to the

13   economic loss rule.  Dkt. No. 54 at 13.  This exception allows for tort claims arising from contracts

14   when the contract involves a special relationship such that "individuals contracting for the

15   provision of services have an independent tort law duty to perform their services in a competent

16   and reasonable manner."  *Land O'Lakes, Inc. v. Dairyamerica, Inc.*, No. 1:15-cv-01937-DAD-

17   MJS, 2017 WL 495644, at *3 (E.D. Cal. Feb. 6, 2017) (finding the professional services exception

18   to the economic loss rule applied, allowing a claim for negligence against a testing lab to survive

19   a motion to dismiss).  However, Upper Deck does not provide any authority showing California

20   courts have applied this limited exception in similar circumstances.  The Court agrees with

21   Defendants that the agreements should be treated like employment contracts, to which California

22   applies the economic loss rule.  *Sheen*, 505 P.3d at 637 ("[W]e have rejected arguments that

23   employment contracts…are sufficiently analogous to the core insurance cases to warrant extension

24   of tort remedies into those areas.")..

Upper Deck has not identified an applicable exception to the economic loss rule, thus the Court will consider whether the economic loss rule bars any of Upper Deck's claims.

**F.    The Economic Loss Rule Bars the Breach of Fiduciary Duty Claim Against Miller.**

Upper Deck's breach of fiduciary duty claim is based upon allegations that Miller "possessed expert knowledge in a unique field" such that he had "professional duties of care and loyalty" wherein he would only provide his expertise "on strict terms of confidentiality and non-disclosure." Dkt. No. 12 ¶¶ 76–77. Upper Deck further alleges that Miller breached those duties "by stealing core concepts and proprietary, novel elements of Upper Deck's game and using it to develop Lorcana." *Id.* ¶ 78. Miller argues the breach of fiduciary duty claim must be dismissed because (1) there was not a fiduciary relationship between Miller and Upper Deck; and (2) the claim is barred by the economic loss rule. Dkt. No. 46 at 14–17, Dkt. No. 55 at 9–11. Upper Deck responds with the inconsistent arguments that Miller's fiduciary duty is created by the agreements (Dkt. No. 54 at 13–15) and that the economic loss rule does not apply because "the fiduciary duty claim is not based in contract" (*id.* at 15). The Court agrees with Miller.

The economic loss rule does not bar a tort claim that arises from a "duty independent of the contract," or where the plaintiff "can demonstrate harm above and beyond a broken contractual promise." *Wright v. Charles Schwab & Co.*, No. 20-cv-05281-LB, 2020 WL 6822887, at *3 (N.D. Cal. Nov. 20, 2020). Upper Deck's fiduciary duty claim falls in neither of these categories. Rather, the fiduciary duty claim is the same as the breach of contract claim and seeks the same relief. *Compare* Dkt. No. 12 ¶ 72 (alleging breach of contract "by disclosing the central, proprietary components and expressions within the game"), *with* Dkt. No. 12 ¶ 78 (alleging breach of fiduciary duty "by stealing core concepts and proprietary, novel elements of Upper Deck's game"). Moreover, Upper Deck admits that the alleged fiduciary duty between Miller and Upper Deck does not arise as matter of law, but was "undertaken by agreement" (Dkt. No. 54 at 13) because the

"[t]he parties agreed Miller would keep his design work confidential and not disclose it" (*id.* at 14). Because the only duties between Upper Deck and Miller arose from contract, the economic loss rule bars the breach of fiduciary duty claim. *See Erlich v. Menezes*, 981 P.2d 978, 983 (Cal. 1999) ("[C]onduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law.").

Accordingly, the Court grants Defendants' motion to dismiss the fiduciary duty claim, without leave to amend. *See CleanFuture, Inc. v. Motive Energy, Inc.*, No. SACV 19-00084-AG (KESx), 2019 WL 2896132, at *5 (C.D. Cal. Apr. 15, 2019) (dismissing breach of fiduciary duty claim with prejudice where "incurably barred" by economic loss rule).

**G.      Upper Deck's Fraud Claims Are Partially Dismissed with Leave to Amend.**

Upper Deck's third cause of action against Miller is for "Fraud (Concealment and Misrepresentation)—[CAL. CIV. CODE] § 1709–1710." Dkt. No. 12 at 17. Under California Civil Code Section 1709, "[o]ne who willfully deceives another with intent to induce harm to alter his position to his injury or risk, is liable for any damage which he thereby suffers." California Civil Code Section 1710 describes the various actions that can be considered "deceit." Relevant here, "deceit" includes fraudulent misrepresentation (*id.* § 1710(1) ("The suggestion, as a fact, of that which is not true, by one who does not believe it to be true[.]"); and fraudulent concealment (*id.* § 1710(3) ("The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact[.]"). Dkt. No. 12 at 17; *see also* 5 B. E. Witkin, *Summary 11th Torts*, § 883 (2023).

As an initial matter, Miller argues the fraud claim, both for misrepresentation and concealment, must be dismissed because the statute does not apply to conduct that occurred primarily outside of California. Dkt. No. 46 at 17. Miller does not provide any authority to support

this proposition.  Moreover, Miller does not identify sufficient allegations to show the relevant acts took place outside of California.  The Court will assume California statutes apply here.

1. <u>The fraudulent misrepresentation claim is dismissed with leave to amend.</u>

In California, a claim for fraudulent misrepresentation requires:

> (1) the defendant represented to the plaintiff that an important fact was true; (2) that representation was false; (3) the defendant knew that the representation was false when the defendant made it, or the defendant made the representation recklessly and without regard for its truth; (4) the defendant intended that the plaintiff rely on the representation; (5) the plaintiff reasonably relied on the representation; (6) the plaintiff was harmed; and (7) the plaintiff's reliance on the defendant's representation was a substantial factor in causing that harm to the plaintiff.

*Thomas v. Regents of Univ. of California*, 97 Cal. App. 5th 587, 637 (Cal. Ct. App. 2023), *reh'g denied* (Dec. 29, 2023), *review denied* (Feb. 28, 2024) (cleaned up).

Upper Deck alleges Miller made one misrepresentation, specifically "that he was ending his contract to obtain or find more traditional full-time employment with benefits[.]"  Dkt. No.12 ¶ 85.  Miller argues this is insufficient because a fraudulent misrepresentation claim requires a statement to be false.  Dkt. No. 46 at 18.  The Court agrees.  Upper Deck does not allege this statement was false and so fails to state a claim.  The fraudulent misrepresentation claim is dismissed with leave to amend.

2. <u>The fraudulent concealment claim is sufficiently pleaded.</u>

To state a claim for fraudulent concealment, Upper Deck must sufficiently allege each of the following elements:

> (1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and would not have acted as he or she did if he or she had known of the concealed or suppressed fact; and (5) plaintiff sustained damage as a result of the concealment or suppression of the fact.

*Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 605–06 (Cal. Ct. App. 2014).  Upper Deck alleges Miller concealed the following facts from Upper Deck: that during his work with Upper Deck, Miller had discussions with Ravensburger about working on a trading card game (Dkt. No. 12 ¶ 83); that upon his departure, Miller would be going to work on a "near-identical [game] based on and using Upper Deck's Rush of Ikorr property" with a competitor (*id.* ¶¶ 84, 85); and that Miller intended "to seize [Upper Deck's] confidential and proprietary game and transfer them to Ravensburger without Upper Deck's knowledge" (*id.* ¶ 88).  Miller argues the fraudulent concealment allegations fail on the first, second, and fourth elements of the claim.

As to the first element of the claim, requiring concealment or suppression of a material fact, under California law,

> [a] misrepresentation is judged to be 'material if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question ... and as such materiality is generally a question of fact unless the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it.'

*Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 985 (N.D. Cal. 2009) (citing *Engalla v. Permanente Medical Group, Inc.*, 938 P.2d 903, 919 (Cal. 1997) (cleaned up)).  Miller conclusively states that his "reasons for terminating an independent-contractor agreement are not material" because Upper Deck was not entitled to that information.  Dkt. No. 55 at 12.  Miller's analysis is incomplete and confuses the duty and materiality elements of the claim.  Miller has not shown that his statements and omissions about his future employment plans are so "obviously unimportant" that they should be considered immaterial as a matter of law.   At this stage, Upper Deck has alleged the concealed facts were material.  Dkt. No. 12 ¶ 91.  Dispositively, Miller's materiality argument also ignores the other non-departure related facts Upper Deck alleges were concealed, leaving it undisputed that, at this stage, Miller's representations about his discussions with Ravensburger (Dkt. No. 12

¶¶ 83–85) were material.  Upper Deck sufficiently alleges concealment or suppression of a material fact.

Turning to the second element of fraudulent concealment, a duty to disclose, Miller argues that he did not, as a matter of law, owe a duty to disclose the alleged concealments to Upper Deck, and if he did owe such a duty, it arose from his contract, thus barring the claim under the economic loss rule.  Upper Deck responds that Miller had a legal duty to disclose his future employment plans because of his "confidentiality obligations" and, separately, because he chose to share information about his future employment plans, he "must make a full and fair disclosure."  Dkt. No. 54 at 17.  As with the breach of fiduciary duty claim, to the extent Miller's legal duty to disclose facts about his future employment arose from contract, they are barred by the economic loss rule.  *See supra* Section II(F).  However, Upper Deck's second alleged basis for Miller's legal duty arises independently from the contract and is not barred by the economic loss rule.  *See Wright*, 2020 WL 6822887, at *3 ("[C]onduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law." (cleaned up)).  Upper Deck's theory that Miller had a duty to make a full and fair disclosure because he chose to share some information about his future employment plans is recognized by California law.  Specifically, California courts have found

> that although one may be under no duty to speak as to a matter, if he undertakes to do so, either voluntarily or in response to inquiries, he is bound not only to state truly what he tells but also not to suppress or conceal any facts within his knowledge which materially qualify those stated. If he speaks at all he must make a full and fair disclosure.

*Mktg. W., Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal. App. 4th 603, 613 (Cal. Ct. App. 1992) (quoting *Rogers v. Warden*, 125 P.2d 7, 9 (Cal. 1942)).  Thus, a fraudulent concealment claim may arise if "the defendant makes representations but does not disclose facts which materially qualify the facts disclosed."  *Id.*  Upper Deck has alleged Miller's statements omitted facts that could have

"materially qualif[ied] the facts disclosed," which is sufficient, at this stage, to allege a duty to disclose.

Lastly, Miller argues Upper Deck fails to sufficiently allege that it would have acted differently had it known the concealed facts, the fourth element of a fraudulent concealment claim. Dkt. No. 46 at 19–20. The Court disagrees. Upper Deck has identified with sufficient particularity how it allegedly would have acted differently had it known any of the concealed facts. *See* Dkt. No. 12 at ¶ 90 (describing actions Upper Deck would have taken as "seeking to ensure Miller returned and destroyed any copies of any documents Miller had relating to Rush of Ikorr, seeking to enjoin the competing, knock-off [game], and/or preventing its current employees and contractors from communicating with Miller about Rush of Ikorr"). The fact that Upper Deck became aware of Miller's employment with Ravensburger in September 2022 and that Miller claims "Upper Deck did nothing" does not change that Upper Deck has adequately pled this element when, at this stage, we must accept Upper Deck's allegations as true. Dkt. No. 46 at 20.

The motion to dismiss the fraudulent concealment claim is denied.

**H.    The Tortious Interference Claims Against Ravensburger Fail to Allege an Independently Wrongful Act and Are Dismissed with Leave to Amend.**

1.    Upper Deck's claim for inducing breach of a written contract is dismissed with leave to amend.

In California, the elements of a claim for interference with a contract are: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 791 P.2d 587, 589–90 (Cal. 1990). Ravensburger argues that Upper Deck fails to plead the second and third elements. Dkt. No. 46 at 21–22.

For the second element, Ravensburger argues a plaintiff must allege the defendant had actual knowledge of the contract in question and that allegations defendant "should have known" are not enough.  Dkt. No. 46 at 21–22.  Even assuming that is the standard, Upper Deck alleges that, "on information and belief, Ravensburger was aware of Miller's contracts with Upper Deck[.]"  Dkt. No. 12 ¶ 98.  Upper Deck also explains the likely hiring process that would have led Ravensburger to learn about the contracts.  *Id.* ¶¶ 97–99.  Accordingly, Upper Deck has sufficiently alleged Ravensburger's knowledge of the agreements.

For the third element, requiring a defendant to have taken intentional acts designed to induce a contract breach, Ravensburger argues the act Upper Deck complains of, hiring Miller away from them to help develop a competing game,[5] is not sufficient because such an act is not wrongful.  Dkt. No. 46 at 22.  Generally, claims for intentional inducement of a breach of contract do not require the intentional act be wrongful.  *See Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 953 (Cal. 2003) ("Thus, while intentionally interfering with an existing contract is a wrong in and of itself…intentionally interfering with a plaintiff's prospective economic advantage is not." (cleaned up)).  However, when a third-party induces breach of an at-will contract, California law requires a wrongful act.  *Ixchel Pharma, LLC v. Biogen, Inc.*, 470 P.3d 571, 580 (Cal. 2020) ("[T]o state a claim for interference with an at-will contract by a third party, the plaintiff must allege that the defendant engaged in an independently wrongful act.").  This makes sense because, without the wrongfulness element, "a competitor's good faith offer that causes a business to withdraw from an at-will contract could trigger liability or at least subject the competitor to costly litigation."  *Id.*  Upper Deck only alleges that Ravensburger hired Miller away

---

[5] Ravensburger also argues "Upper Deck has not pled conduct *by Ravensburger* designed to induce any breach."  Dkt. No. 46 at 22.  This argument is immediately undermined by Ravensburger's next sentence that cites the complaint's allegation that Ravensburger hired Miller away from Upper Deck.  *Id.*

from them and caused Miller to breach the confidentiality provisions of the agreements. These are not independently wrongful acts. *See Drink Tank Ventures LLC v. Real Soda in Real Bottles, Ltd.*, 71 Cal. App. 5th 528, 540 (Cal. Ct. App. 2021), *as modified on denial of reh'g* (Dec. 2, 2021) ("Because a bare breach of contract, without more, is not tortious, such a breach cannot constitute independently wrongful conduct"). Upper Deck thus fails to plead an independently wrongful act, a requirement to state a claim for inducing a breach of an at-will contract in California.

The motion to dismiss the intentional inducement of a breach of contract claim is granted, with leave to amend.

2. <u>The intentional interference with prospective economic relations claim is dismissed with leave to amend.</u>

The elements of a claim for intentional interference with prospective economic relations are:

> (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional wrongful acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.

*Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008) (cleaned up). Like the inducing breach of a written contract claim, Ravensburger argues that Upper Deck fails to sufficiently allege the knowledge or wrongful act elements. Dkt. No. 46 at 23–24. For the reasons stated above, Upper Deck has sufficiently pleaded Ravensburger's knowledge of the agreements but has failed to plead an independently wrongful act. *See supra* Section II(H)(1). Accordingly, the claim for intentional interference with prospective economic relations is dismissed with leave to amend.[6]

---

[6] Defendants also argue this claim is preempted by copyright law. Dkt. No. 46 at 24. Because this claim is dismissed with leave to amend, the Court declines to perform the copyright preemption analysis on hypothetical allegations.

1

2
**I.      Upper Deck Sufficiently Alleges a Copyright Claim.**

3
         To prove copyright infringement, Upper Deck must show (1) it owned a valid copyright;

4
and (2) Defendants "copied protected aspects of the work." *Skidmore as Tr. for Randy Craig*

5
*Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020).   Upper Deck alleges copyright

6
infringement of two registered copyrights.  Dkt. No. 12 ¶ 114.  The copyright registrations are for

7
"text, 2-D artwork."  Dkt. No. 49 at 5, 7.  Upper Deck alleges "several examples of copying of

8
protected expression between the [copyrights] and the Lorcana game," including "[s]ubstantially

9
similar or near identical Creatures/Champions" and "unique and expressive game effects."  Dkt.

No. 12 ¶ 116.

10
         Defendants argue Upper Deck fails to plead a copyright infringement claim because the

11
material identified in the complaint is not text or 2-D artwork and merely describes game

12
mechanics.  Dkt. No. 46 at 25–27.  But this ignores that, as explained in its opposition, Upper

13
Deck's examples of infringement include "direct quotes of text from the copyrighted materials."

14
Dkt. No. 54 at 23.[7]  Defendants do not dispute that quoted text can form the basis of a copyright

15
claim.  Thus, Defendants' motion to dismiss the copyright claim is denied.

16
**J.      Upper Deck Sufficiently Alleges a Conversion Claim Against Ravensburger.**

17
         In California, "[t]he elements of conversion are: (1) the plaintiff's ownership or right to

18
possession of the property; (2) the defendant's conversion by a wrongful act or disposition of

19
property rights; and (3) damages."  *Yellowcake, Inc. v. Morena Music, Inc.*, 522 F. Supp. 3d 747,

20
774 (E.D. Cal. 2021) (citing *Lee v. Hanley*, 354 P.3d 334, 344 (Cal. 2015)).   For its conversion

21
claim, Upper Deck alleges Defendants took possession of Upper Deck's property, described as

22

23

24
[7] Notably, the examples of infringement provided in paragraph 116(b) do not appear to be quoted material, and are instead descriptions of game mechanics and Upper Deck admits "game rules and other mechanics are not protected." Dkt. No. 54 at 23.  Since the allegations of infringement of quoted text in paragraph 116(a) are sufficient at this stage, the Court will not decide whether or not these separate examples are protected under copyright law.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

"Rush of Ikorr as a whole and the related design, details, concepts, and mechanics upon which Rush of Ikorr is played" and applied this property "to develop a [game] for its own account and benefit." Dkt. No. 12 ¶¶ 120, 121.  Defendants seek dismissal because (1) the claim against Miller is barred by the economic loss rule, (2) conversion cannot apply to intangible property or ideas, and (3) the claim is preempted by the Copyright Act.  Dkt. No. 46 at 28.

First, Upper Deck's conversion claim against Miller is barred by the economic loss rule. Upper Deck argues its conversion claim is based on more than just contractual duties and its "right to its game designs" exists outside of its contract with Miller.  Dkt. No. 54 at 26.  But the complaint alleges that Rush of Ikorr did not exist before the 2018 Summit and only came to be under the terms of the 2018 Agreement (Dkt. No. 12 ¶ 28), and that the development of Rush of Ikorr was governed by the 2019 Agreement (*id.* ¶ 29).  Upper Deck's ownership interests and Miller's duties of confidentiality, which form the basis of the conversion claim, arose solely from the agreements. Thus, the claim for conversion is barred by the economic loss rule.  *Contra Fine v. Kansas City Life Ins*. Co., 627 F. Supp. 3d 1153, 1161 (C.D. Cal. 2022) ("Whether the economic loss rule bars a conversion claim turns on whether the ownership interest that formed the basis for the conversion claim preexisted the contract or arises from the contract.  Where the interest preexisted the contract, a conversion claim will lie." (cleaned up)).

Second, for the conversion claim against Ravensburger, Defendants argue that Upper Deck fails to allege the loss of tangible items.  Dkt. No. 46 at 28.  California law does not require a tangible item to state a claim for conversion.  *Voris v. Lampert*, 446 P.3d 284, 290 (Cal. 2019) ("Although the question was once the matter of some controversy, California law now holds that property subject to a conversion claim need not be tangible in form; intangible property interests, too, can be converted.").  Even if a tangible item was required, the allegations in the complaint include tangible documents.  Dkt. No. 54 at 8 ("These items were set out in drafts and other

1    documents that Defendants accessed and took for their own use.").  As part of Upper Deck's fraud

2    allegations, which are incorporated by reference into the conversion claim, Upper Deck alleges the

3    existence of working drafts of the game and other tangible documents that it alleges were converted

4    by Miller.  Dkt. No. 12 ¶¶ 87–90.  Accordingly, Upper Deck states a claim for conversion under

5    California law.

6            Lastly, Defendants argue the conversion claim is preempted by copyright law because

7    Upper Deck only seeks damages, not the return of tangible property.  Dkt. No. 46 at 28–29.  Upper

8    Deck responds the conversion claim can be pled in the alternative and that the conversion claim is

9    broader than the copyright claim and thus is not preempted.  Dkt. No. 54 at 27.

10           For a state law claim to be completely preempted by the Copyright Act, the "work at issue

11   must come within the subject matter of copyright" and "the rights granted under the state law must

12   be equivalent to one of the exclusive rights within the general scope of copyright."  *Mattel, Inc. v.*

13   *Bryant*, 441 F. Supp. 2d 1081, 1093 (C.D. Cal. 2005), *aff'd*, 446 F.3d 1011 (9th Cir. 2006) (cleaned

14   up).  Defendants do not perform this analysis or reply to Upper Deck's arguments.  *See* Dkt. No.

15   46 at 28–29, Dkt. No. 55 at 15–16.  Without more analysis, and at this stage of the case, the Court

16   does not find the conversion claim preempted merely because the request for relief does not

17   affirmatively seek "return of tangible property."  Dkt. No. 46 at 28, *see Shay v. Apple Inc.*, 512 F.

18   Supp. 3d 1066, 1071 (S.D. Cal. 2021) ("On a motion to dismiss, it is the defendant's burden to

19   demonstrate that plaintiff has failed to state a claim.").

20           Thus, Defendants' motion to dismiss the conversion claim against Miller is granted but the

21   motion to dismiss the conversion claim against Ravensburger is denied.

22   **K.    Upper Deck Fails to Allege its Unfair Competition Claim.**

23           For its unfair competition claim under California Business and Professions Code Section

24   17200, Upper Deck alleges "[t]he conduct of Miller and Ravensburger, as described here,

constitutes unfair competition in violation of California Business & Professions Code, Section 17200, *et seq.*"  Dkt. No. 12 ¶ 128.  Defendants correctly argue Upper Deck "must identify the prong(s) underlying its unfair competition claim."  *United States, for the Use of Integrated Energy, LLC v. Siemens Gov't Techs., Inc.*, No. SACV 15-01534-JVS (DFMx), 2016 WL 11743176, at *5 (C.D. Cal. June 13, 2016).  Upper Deck tries to cure this omission in its opposition by explaining the earlier allegations make "clear that the conduct at issue is illegal (i.e. violates some law) and/or fraudulent (for the fraud cause of action)."  Dkt. No. 54 at 27.  Upper Deck can clarify this on amendment.  *See Integrated Energy*, 2016 WL 11743176, at *5 n.3.[8]

The Court therefore grants the motion to dismiss Upper Deck's unfair competition claim with leave to amend.[9]

### III.   CONCLUSION

For these reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss.  Dkt. No. 46.

1.   The motion is granted without leave to amend as to the breach of fiduciary duty claim against Miller and conversion claim against Miller.

2.   The motion is granted with leave to amend as to the fraudulent misrepresentation claim against Miller, the inducing breach of contract claim against Ravensburger, the intentional interference with prospective economic advantage claim against Ravensburger, and the unfair competition claim against Defendants.

//

[8] Defendants also argue this claim is preempted by copyright law.  Dkt. No. 46 at 29–30.  Because this claim is dismissed with leave to amend, the Court declines to perform the copyright preemption analysis on hypothetical allegations.

[9] Any amendment to this claim cannot reallege disgorgement of profits as an available remedy for any repleaded unfair competition cause of action.  *See* Dkt. No. 54 at 27 ("Plaintiff agrees that disgorgement is not available under the UCL and is amenable to removing that remedy under UCL cause of action.").

1

2       3.   The motion is denied as to the remaining claims.

3       4.   If Upper Deck wishes to amend its complaint, it must do so by September 13, 2024.

4   Dated this 16th day of August, 2024.

5

6   _____
    Kymberly K. Evanson
7   United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 20