THE HONORABLE KYMBERLY K. EVANSON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

THE UPPER DECK COMPANY, a Nevada corporation,

Plaintiff,

v.

RYAN MILLER, an individual; and RAVENSBURGER NORTH AMERICA, INC., a Washington corporation,

Defendants.

No. 2:23-cv-01936

**DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

**NOTE ON MOTION CALENDAR: OCTOBER 25, 2024**

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**TABLE OF CONTENTS**

                                                                    Page

I.      Introduction ................................................................................................. 1

II.     Background and Procedural History ........................................................... 2

        1.      The parties ...................................................................... 2

        2.      Mr. Miller's contractual relationship with Upper Deck ............................ 2

        3.      Mr. Miller's employment with Ravensburger ............................ 3

        B.      Procedural history ...................................................................... 4

III.    Upper Deck's Amended Claims Fail as a Matter of Law ................................... 5

        A.      The fraudulent misrepresentation claim fails as a matter of law. ........................... 5

        B.      The inducement claim fails as a matter of law for the same reason as
                before: Upper Deck has not plausibly alleged an independently wrongful
                act by Ravensburger. ................................................................ 8

        C.      The interference claim fails as a matter of law. ................................... 11

        D.      The UCL claim still fails as a matter of law. ................................... 12

                1.      Upper Deck has not meaningfully identified the prongs underlying
                        its UCL claim. ........................................................ 12

                2.      Upper Deck has not plausibly alleged "unfair" conduct by
                        Ravensburger. ........................................................ 13

                3.      Upper Deck has not plausibly alleged "unlawful" conduct by
                        Ravensburger. ........................................................ 14

        E.      The amended claims should be dismissed with prejudice. ........................... 16

IV.     Conclusion ........................................................................................... 18

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abagninin v. AMVAC Chem. Corp.*,
  545 F.3d 733 (9th Cir. 2008) ............................................................16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................5, 10

*Balik v. Spiral Toys Inc.*,
  No. CV 15-8112-GW(PLAX), 2016 WL 7496134 (C.D. Cal. Feb. 1, 2016)........................16

*Barahona v. Union Pac. R.R. Co.*,
  881 F.3d 1122 (9th Cir. 2018) ............................................................16

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) ............................................................13, 14

*Crown Imports, LLC v. Superior Ct.*,
  223 Cal. App. 4th 1395 (2014) ............................................................10, 15

*Drink Tank Ventures LLC v. Real Soda in Real Bottles, Ltd.*,
  71 Cal. App. 5th 528 (2021), *as modified on denial of reh'g* (Dec. 2, 2021) ............................9

*Graham v. Bank of Am., N.A.*,
  226 Cal. App. 4th 594 (2014) ............................................................5, 7

*Ixchel Pharma, LLC v. Biogen, Inc.*,
  9 Cal. 5th 1130 (2020) ............................................................8, 9, 11

*Kendall v. Visa U.S.A., Inc.*,
  518 F.3d 1042 (9th Cir. 2008) ............................................................16, 17

*Khoja v. Orexigen Therapeutics. Inc.*,
  899 F.3d 988 (9th Cir. 2018) ............................................................3

*Kodadek v. MTV Networks, Inc.*,
  152 F.3d 1209 (9th Cir. 1998) ............................................................15, 16

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) ............................................................9, 11

*Kwikset Corp. v. Superior Ct.*,
  51 Cal. 4th 310 (2011) ............................................................12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Larson Motors, Inc. v. Gen. Motors, LLC*,
  No. C21-1367-JCC, 2022 WL 952182 (W.D. Wash. Mar. 30, 2022) ....................................17

*LeGrone v. King Cnty.*,
  No. 2:23-CV-01102-LK, 2024 WL 2251599 (W.D. Wash. May 17, 2024)..........................17

*Melchior v. New Line Prods., Inc.*,
  106 Cal. App. 4th 779 (2003) ...................................................................................14, 15, 16

*Navarro v. Block*,
  250 F.3d 729 (9th Cir. 2001) ...............................................................................................5

*Nazemi v. Specialized Loan Servicing, LLC*,
  637 F. Supp. 3d 856 (C.D. Cal. 2022), *appeal dismissed*, No. 22-56091, 2023
  WL 8170736 (9th Cir. Feb. 24, 2023) .................................................................................14

*Nuvo Rsch. Inc. v. McGrath*,
  No. C 11-4006 SBA, 2012 WL 1965870 (N.D. Cal. May 31, 2012) ...................................12

*Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC*,
  165 F. Supp. 3d 937 (S.D. Cal. 2016)..................................................................................13

*Pemberton v. Nationstar Mortg. LLC*,
  331 F. Supp. 3d 1018 (S.D. Cal. 2018).................................................................................6

*Reeves v. Hanlon*,
  33 Cal. 4th 1140 (2004) ........................................................................................10, 11, 15

*Ryan v. Editions Ltd. W., Inc.*,
  786 F.3d 754 (9th Cir. 2015) ..............................................................................................15

*Salameh v. Tarsadia Hotel*,
  726 F.3d 1124 (9th Cir. 2013) ............................................................................................16

*Smith v. State Farm Mut. Auto. Ins. Co.*,
  93 Cal. App. 4th 700 (2001), *as modified* (Nov. 20, 2001) ....................................................14

*Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*,
  521 F. Supp. 3d 929 (S.D. Cal. 2021)....................................................................................8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Sprewell v. Golden State Warriors,*
266 F.3d 979 (9th Cir. 2000), *opinion amended on denial of reh'g,* 275 F.3d
1187 (9th Cir. 2001)...................................................................................................5, 6

*United States ex rel. Integrated Energy, LLC v. Siemens Gov't Techs., Inc.,*
No. SACV 15-01534 JVS (DFMx), 2016 WL 11743176 (C.D. Cal. June 13,
2016) ........................................................................................................................12

*United States v. Ritchie,*
342 F.3d 903 (9th Cir. 2003) .....................................................................................3

*Warner v. Tinder Inc.,*
105 F. Supp. 3d 1083 (C.D. Cal. 2015) ...................................................................15

STATUTES

17 U.S.C. § 106....................................................................................................................16

Cal. Bus. & Prof. Code §§ 17200, *et seq.* ..........................................................................4

DEFENDANTS' PARTIAL MOTION TO DISMISS
SAC (No. 2:23-cv-01936) –iv

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1   **I.      Introduction**

2          In its Second Amended Complaint ("**SAC**"), Plaintiff The Upper Deck Company

3   ("**Upper Deck**") makes its third attempt to plead claims for fraudulent misrepresentation,

4   inducement of breach, interference with business relationships, and unfair competition. This

5   attempt is at best half-hearted, consisting only of a handful of additional conclusory allegations

6   and almost no new factual allegations. Unsurprisingly, the amended claims suffer from largely

7   the same defects in the First Amended Complaint ("**FAC**"). The claims should be dismissed,

8   without leave to amend.

9          The fraudulent misrepresentation claim ostensibly remains focused on the statement

10  Defendant Ryan Miller allegedly made when leaving Upper Deck:  that he was seeking full-time

11  employment elsewhere. Once again, Upper Deck fails to plead any facts showing that the

12  statement was false, instead choosing to rely on a bare conclusion. This is insufficient as a matter

13  of law. At any rate, Upper Deck's factual allegations confirm Mr. Miller's statement was ***true***—

14  he terminated his freelance contract with Upper Deck to become a full-time employee of

15  Ravensburger. The claim also fails because the surrounding allegations of reliance and harm

16  focus on concealment, not misrepresentation. Upper Deck already has a concealment claim; it

17  cannot smuggle in a misrepresentation claim using the same allegations.

18         The inducement and interference claims fare no better. As they did in the FAC, both

19  claims still lack allegations that the act of inducement or interference was independently

20  wrongful. Upper Deck's sparsely amended allegations regarding *why* Ravensburger hired

21  Mr. Miller and what they did *after* hiring him are irrelevant to this analysis and cannot save these

22  claims.

23         Finally, the single sentence Upper Deck adds to its unfair competition claim does not

24  cure its deficiencies. The claim does not contain any allegations of wrongdoing by Mr. Miller.

25  And Upper Deck refuses to provide any information as to what conduct allegedly meets the

26  "unfair" or "unlawful" prongs of the claim. Moreover, the sole factual allegation in the claim

DEFENDANTS' PARTIAL MOTION TO
DISMISS SAC – 1
(No. 2:23-cv-01936)

makes it clear the gravamen of the claim is copyright infringement, confirming the claim is preempted.

Upper Deck's repeated failure to adequately plead these amended claims shows that further amendment would be futile. The amended claims should be dismissed with prejudice.

## II.   Background and Procedural History[1]

### 1.   The parties

Upper Deck is a "worldwide sports and entertainment company" incorporated in Nevada with its principal place of business in Carlsbad, California. SAC ¶ 4. Upper Deck manufactures trading card games ("**TCGs**"), including the "still-in-progress" Rush of Ikorr. *Id.* ¶¶ 7–8.

Ravensburger is a toy and game maker with its principal place of business in Seattle, Washington. *Id.* ¶¶ 6, 10. Ravensburger makes puzzles, tabletop games, and other children's toys with a family-friendly focus. At issue is Ravensburger's recently released Disney Lorcana, a card-game based on the vast library of Disney characters. *Id.* ¶¶ 10, 43–54.

Ryan Miller is a longtime Washington resident and a prominent TCG designer. With decades of experience in the industry, Mr. Miller has worked on several popular games, such as Magic: The Gathering, Duel Masters, and Digimon. *Id.* ¶ 9. Prior to joining Ravensburger, Mr. Miller worked as an independent freelance game designer and consultant. Dkt. 48 (Decl. of Ryan Miller ["**Miller Decl.**"] ¶ 4).

### 2.   Mr. Miller's contractual relationship with Upper Deck

During his time as a freelance game designer, Upper Deck retained Mr. Miller to collaborate and develop a TCG known as "Shell Beach." Dkt. 48 (Miller Decl.), Ex. 2 ("**Shell Beach Agreement**"). Upper Deck alleges that the Shell Beach game became Rush of Ikorr. SAC ¶ 15.

---

[1] Upper Deck's SAC contains nearly identical factual allegations to those alleged in its FAC. The relevant facts from the SAC are provided below only for purposes of Defendants' Rule 12(b)(6) motion, and by reciting them, Defendants neither admit nor deny their truth.

DEFENDANTS' PARTIAL MOTION TO
DISMISS SAC – 2
(No. 2:23-cv-01936)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Mr. Miller's involvement with Shell Beach began around November 2018, when Upper Deck invited him and "several game designers" to a summit to brainstorm and collaborate on new TCGs. SAC ¶¶ 11, 14. In exchange for compensation for his time and work over a weekend visit to Upper Deck, Mr. Miller signed the 2018 Upper Deck Gaming Summit Agreement. *Id.* ¶ 12; *see also* Dkt. 48 Miller Decl., Ex. 1 ("**Summit Agreement**") (together with the Shell Beach Agreement, the "**Agreements**").[2]

In June 2019, Upper Deck retained Mr. Miller as an independent contractor to do additional design work for the Shell Beach game. *See* SAC ¶¶ 15–16; Shell Beach Agreement § 2. Mr. Miller was compensated based on his completion of various milestones. SAC ¶¶ 19–20.

Like many freelancers, Mr. Miller eventually concluded that he needed stable, full-time employment, and on or about October 21, 2020, he informed Upper Deck that he would be terminating the Shell Beach Agreement. *Id.* ¶ 21.

### 3.   Mr. Miller's employment with Ravensburger

Mr. Miller joined Ravensburger as a full-time employee in November 2020, after terminating the Shell Beach Agreement. Dkt. 48 (Miller Decl. ¶ 3); *see also* SAC ¶ 5. Around September of 2022, Ravensburger announced the development of Lorcana, identifying Mr. Miller as "the product manager and co-designer" of the game. *Id.* ¶ 27. In April 2023, Ravensburger released the game rules and video demonstrations for Lorcana. *Id.* ¶ 28. Lorcana was released later that year. *Id.* ¶ 29.

\* \* \*

Upper Deck alleges aspects of the game design for Lorcana and its unreleased Rush of Ikorr are similar (*id.* ¶ 99) and claims Mr. Miller used his work on Shell Beach (now Rush of

---

[2] The Agreements are incorporated into the SAC and thus may be considered with the pleadings. *Khoja v. Orexigen Therapeutics. Inc.*, 899 F.3d 988, 998 (9th Cir. 2018); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). *See also* Dkt. 58 (Order Granting in Part and Denying in Part Motion to Dismiss) at 5 (copyright registrations and Agreements were incorporated by reference into the complaint).

Ikorr) to design Lorcana (*id.* ¶ 58).

**B.    Procedural history**

On June 7, 2023, Upper Deck filed this lawsuit in San Diego Superior Court alleging that Mr. Miller stole Upper Deck's Rush of Ikorr game and gave it to Ravensburger.[3] Defendants removed the case to federal court, and then filed a motion to dismiss (Dkt. No. 7), prompting Upper Deck to file the FAC.

On August 21, 2023, Defendants filed a second motion to dismiss and/or transfer the case to this Court. *See* Dkt. No. 20. On December 14, 2023, the Southern District of California granted Defendants' motion in part, ordering the transfer of venue to this Court's jurisdiction, and declining to rule on the merits of the motion to dismiss. *See* Dkt. No. 29-1.

Defendants renewed their motion to dismiss the FAC on January 18, 2024. Dkt. 46. On August 16, the Court granted Defendants' motion in part. Dkt. 58 (the "**Order**"). The Court dismissed the claims against Mr. Miller for breach of fiduciary duty and conversion without leave to amend, finding they were barred by the economic loss rule. *Id.* at 8–9, 17. The Court also dismissed four other claims, but gave Upper Deck leave to amend: fraudulent misrepresentation (against Mr. Miller), inducing breach of contract and intentional interference with prospective economic relations (against Ravensburger), and unfair competition in violation of California Business and Professions Code §§ 17200, *et seq.* (the "**UCL**") (against both Defendants).[4]

Upper Deck filed the SAC on September 13, 2024. Dkt. 62 (SAC). The SAC realleges all four claims that were dismissed without prejudice from the FAC:  fraudulent misrepresentation (SAC ¶¶ 60-73), inducing breach of contract (*id.* ¶¶ 74-85), intentional interference with prospective economic relations (*id.* ¶¶ 86-95), and violation of the UCL (*id.* ¶¶ 108-112). But, as

---

[3] On June 7, 2023—the same day it filed this lawsuit—Upper Deck filed two copyright applications for Rush of Ikorr. *See* Dkt. 49 ("Perez Decl.") Exs. A–B (U.S. Copyright Office registration records for VAu 1-499-443 and VAu 1-500-801).

[4] The Court declined to dismiss the remaining claims against Defendants.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1  discussed below, *see infra* Part III, Upper Deck alleges few **facts** to support the resurrected

2  claims. Instead, Upper Deck's new allegations are primarily unadorned conclusions and recitals

3  of the legal elements of the causes of action. *See* Declaration of Christian W. Marcelo ("**Marcelo**

4  **Decl.**") ¶ 1, Ex. 1 (copy of the SAC highlighted to show the additions made from Plaintiff's

5  FAC).

6  **III.    Upper Deck's Amended Claims Fail as a Matter of Law**

7      A complaint must contain sufficient factual matter to "state a claim to relief that is

8  plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible

9  only "when the plaintiff pleads factual content that allows the court to draw the reasonable

10  inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard

11  . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

12      Dismissal is appropriate where there is no cognizable legal theory or where there are

13  insufficient facts alleged to support a cognizable legal theory. *Navarro v. Block*, 250 F.3d 729,

14  732 (9th Cir. 2001). In ruling on a Rule 12(b)(6) motion, the Court need not "accept as true

15  allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

16  inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2000), *opinion

17  amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) (subsequent history omitted). Legal

18  conclusions and "[t]hreadbare recitals of the elements of a cause of action" do not suffice. *Iqbal*,

19  556 U.S. at 678.

20      **A.    The fraudulent misrepresentation claim fails as a matter of law.**

21      To state a claim for fraudulent misrepresentation, Upper Deck must specifically allege

22  that: (1) Mr. Miller represented "that an important fact was true;" (2) the "representation was

23  false;" (3) he knew "the representation was false when [he] made it;" (4) he "intended that

24  [Upper Deck] rely on the representation;" (5) Upper Deck "reasonably relied on the

25  representation"; (6) Upper Deck was harmed; and (7) Upper Deck's "reliance on [Mr. Miller's]

26  representation was a substantial factor in causing that harm[.]" *Graham v. Bank of Am., N.A.*,

DEFENDANTS' PARTIAL MOTION TO
DISMISS SAC – 5
(No. 2:23-cv-01936)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    226 Cal. App. 4th 594, 605–06 (2014) (cleaned up). Upper Deck must also satisfy the heightened

2    particularity requirements of Rule 9(b) by identifying "the who, what, when, where, and how of

3    the misconduct charged, as well as what is false or misleading about the purportedly fraudulent

4    statement, and why it is false." *Pemberton v. Nationstar Mortg. LLC*, 331 F. Supp. 3d 1018,

5    1044 (S.D. Cal. 2018) (cleaned up).

6          Once again, Upper Deck falls far short of these requirements. The "renewed" fraudulent

7    misrepresentation claim fails for the same reason as the original—Upper Deck does not plausibly

8    allege falsity. Also fatal is Upper Deck's failure to allege any facts about reliance or causation.

9          Upper Deck's fraudulent misrepresentation theory rests on a single allegation: that

10    Mr. Miller "advised Upper Deck[] . . . that he was ending his contract to obtain or find more

11    traditional full-time employment with benefits[.]" *See* FAC ¶ 85; *see also* SAC ¶ 64. The Court

12    dismissed the original fraudulent misrepresentation claim because Upper Deck failed to allege

13    Mr. Miller's statement was false. Dkt. 58 at 10.

14          Upper Deck's attempt to resurrect its fraudulent misrepresentation claim in the SAC fares

15    no better. The "renewed" fraudulent misrepresentation claim is based on the same statement

16    alleged in the FAC; but now, Upper Deck alleges Mr. Miller's statement was false. *Compare*

17    FAC ¶ 85 *with* SAC ¶ 64; *see also* Order at 10. Incredibly, Upper Deck offers no factual

18    allegations to support this conclusion; it simply claims that Mr. Miller "**falsely** advised Upper

19    Deck . . . that he was ending his contract to obtain . . . more traditional full-time employment

20    with benefits[.]" SAC ¶ 64 (emphasis added). The Court need not accept this "merely

21    conclusory" allegation as true. *Sprewell*, 266 F.3d at 988.

22          Nor should it. As Upper Deck concedes elsewhere in its SAC, ***Mr. Miller's statement***

23    ***was true.*** Mr. Miller *did* "obtain and find . . . full-time employment" with Ravensburger. *See*

24    SAC ¶ 5 (alleging Mr. Miller "is a current employee of Ravensburger"); *id.* ¶ 76 (alleging

25    Ravensburger "extended Miller an offer to join Ravensburger" and detailing the "hiring" "and

26    onboarding" processes for "new employees" like Mr. Miller); *id.* ¶¶ 80, 89 ("Ravensburger hired

DEFENDANTS' PARTIAL MOTION TO
DISMISS SAC – 6
(No. 2:23-cv-01936)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    Miller away from Upper Deck"). Thus, Upper Deck again fails to plead the necessary "falsity"
2    element.

3         Upper Deck also fails to plead that it relied (reasonably or otherwise) on Mr. Miller's
4    representation that he was looking to "obtain or find more traditional full-time employment with
5    benefits[.]" SAC ¶¶ 65–73; *see also Graham*, 226 Cal. App. 4th at 609, (dismissing fraud claim
6    where plaintiff failed to allege a "sufficient nexus between the alleged misrepresentations . . . and
7    his alleged economic harm"). The SAC alleges no facts about how Upper Deck relied on
8    Mr. Miller's allegedly false statement. Instead, Upper Deck alleges it would have acted differently
9    if it had "known that Miller was talking to and/or potentially working with Ravensburger" or that
10   Ravensburger was planning to develop its own TCG. SAC ¶ 69. But even a cursory read of the
11   SAC reveals that Upper Deck's alleged inaction flows from Mr. Miller's purported ***concealment***
12   of his plan "to start working on Ravensburger's first ever . . . TCG," not his ***affirmative statement***
13   that he wanted "to find more traditional full-time employment[.]" *See id*. ¶ 64. These allegations
14   of reliance—which are rooted in a theory of concealment—do not support a fraudulent
15   misrepresentation claim. *Compare* FAC ¶ 90 *with* SAC ¶ 69; *see also* Order at 13 (holding that the
16   same allegations in SAC paragraph 69 were connected to the FAC's fraudulent concealment
17   claim).

18        Likewise, Upper Deck does not allege that its reliance on Mr. Miller's statement that he
19   was seeking "traditional full-time employment" caused Upper Deck any harm, much less that the
20   statement was a "substantial factor" in that harm. *Id.* ¶ 71. To the contrary, Upper Deck's
21   allegation of harm omits the word or concept of misrepresentation altogether: "Miller's
22   *concealment* is a substantial factor in this harm as it would not have occurred *but for the*
23   *concealment* and related activities by Miller and Ravensburger." *Id.* (emphasis added). The Court
24   should reject this thinly veiled attempt to smuggle in a claim for fraudulent misrepresentation
25   under the guise of concealment and dismiss this claim.

26        Because the facts necessary to plausibly allege reliance are solely within Upper Deck's

DEFENDANTS' PARTIAL MOTION TO
DISMISS SAC – 7
(No. 2:23-cv-01936)

knowledge and control, discovery will not cure the defects in this claim. If Upper Deck cannot allege reliance now, it has no hope of doing so later. Dismissal with prejudice is appropriate.

**B.  The inducement claim fails as a matter of law for the same reason as before: Upper Deck has not plausibly alleged an independently wrongful act by Ravensburger.**

To raise a claim for inducing breach of a written contract, Upper Deck must plead and prove: (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach; (4) actual breach; and (5) resulting damage. *See Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*, 521 F. Supp. 3d 929, 961 (S.D. Cal. 2021). Where an at-will contract is at issue, California law imposes an additional requirement: the intentional act must be independently wrongful. *See* Order at 14; *see also Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1148 (2020). Once again, Upper Deck has not pled an essential element of its "renewed" inducement claim, because it has failed to plausibly allege an independently wrongful act by Ravensburger. *See* Order at 14–15.

The Court dismissed the inducement claim in the FAC for failure to plead the third element, after expressly holding Upper Deck's allegations that "Ravensburger hired Miller away . . . and caused Miller to breach the confidentiality provisions of the agreements . . . are not independently wrongful acts." *Id.*

The SAC repeats these inadequate allegations, although Upper Deck attempts to bolster them with the addition of a couple of paragraphs apparently designed to provide more color on Ravensburger's purportedly inducing conduct. *Compare* SAC ¶ 80 *with* FAC ¶ 101; *see also* SAC ¶¶ 81–82.[5] But the new allegations—which are largely rank speculation—also fail to plausibly state a claim for relief.

First, Upper Deck's amendment appears to focus on the alleged *reason* Ravensburger

---

[5] Upper Deck's amendment to the interference claim is substantively identical. *See* SAC ¶¶ 93–94.

1  hired Mr. Miller—purportedly to obtain and use Upper Deck's intellectual property. *See* SAC

2  ¶ 81 ("Miller and Upper Deck's protected information were essentially a package deal that

3  Ravensburger received through moving Miller to the company. . . . In order to complete its theft

4  of Upper Deck's intellectual property, Ravensburger induced Miller to terminate his contract

5  with Upper Deck[.]"); *id.* ¶ 93. But Ravensburger's motivation for hiring Mr. Miller is irrelevant;

6  "[a]n act is not independently wrongful merely because defendant acted with an improper

7  motive." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1158 (2003). Upper

8  Deck's allegations about Mr. Miller's conduct (e.g., allegedly sharing information with

9  Ravensburger while employed by Upper Deck) (SAC ¶¶ 81, 93) are also irrelevant to the

10  question of whether *Ravensburger's* conduct was wrongful.[6] At any rate, these allegations are

11  but a rearticulation of conduct the Court has already held is not independently wrongful—the

12  alleged breach of the confidentiality provisions in the Agreements. *Compare* SAC ¶¶ 81, 93 *with*

13  Order at 14–15 citing *Drink Tank Ventures LLC v. Real Soda in Real Bottles, Ltd.*, 71 Cal. App.

14  5th 528, 540 (2021), *as modified on denial of reh'g* (Dec. 2, 2021) ("Because a bare breach of

15  contract, without more, is not tortious, such a breach cannot constitute independently wrongful

16  conduct").

17      Second, Upper Deck contends Ravensburger's inducement of the breach of the

18  [Agreements] was "occasioned by . . . independently wrongful acts, including copyright

19  infringement, conversion, and unfair and unlawful competition under California's UCL." SAC

20  ¶ 82; *id.* ¶ 94 (similar allegation for the interference claim). Upper Deck offers no support for

21  this speculative assertion: it alleges no facts about how conduct constituting copyright

22  infringement, conversion, or a violation of the UCL "occasioned" Ravensburger's alleged

---

[6] Upper Deck's allegation that such sharing of information occurred before Mr. Miller was hired is irrelevant for a second reason:  it would have occurred before the "hiring process" in which Upper Deck alleges that Ravensburger would have discovered the existence of these contracts and his relationship with Upper Deck, another essential element to both claims. *Ixchel Pharma*, 9 Cal. 5th at 1141 (knowledge of contract and relationship required for inducing breach and interference with prospective economic relationship claims respectively).

DEFENDANTS' PARTIAL MOTION TO
DISMISS SAC – 9
(No. 2:23-cv-01936)

1    inducement of Mr. Miller's purported breach of the Agreements. *See generally,* SAC. This

2    "[t]hreadbare recital[]" insufficient to plausibly state a claim for relief. *Iqbal*, 556 U.S. at 678.

3         And this assertion is inconsistent with the rest of the SAC: Upper Deck alleges that

4    "hiring Miller away" from Upper Deck was the precursor to Ravensburger's alleged misconduct,

5    not the other way around. *See e.g*, SAC ¶ 64 (alleging Mr. Miller concealed "that he was

6    terminating his contract with Upper Deck *to start* working on [Lorcana]") (emphasis added);

7    ¶ 79 ("Ravensburger induced and intended for Miller to breach his obligations *so that* it could

8    quickly put together the Lorcana game based largely off the working draft of Rush of Ikorr")

9    (emphasis added); ¶ 89 ("Ravensburger hired Miller away from Upper Deck to use the

10   confidential, proprietary drafts and other work product developed by Upper Deck"). By focusing

11   on conduct that occurred *after* the alleged inducement or interference, Upper Deck has the

12   analysis backwards.

13        In assessing the "independently wrongful" requirement, courts focus on whether the

14   conduct that is alleged to have induced the breach is itself wrongful—not whether conduct that

15   followed an alleged breach may have been wrongful. *See Crown Imports, LLC v. Superior Ct.*,

16   223 Cal. App. 4th 1395, 1404 (2014) ("The independently wrongful act must be the act of

17   interference itself, but such act must itself be independently wrongful."). Said another way, it is

18   not enough to plead that there was both interference and a subsequent or separate wrongful act.

19   "Instead, a plaintiff must plead and prove that the conduct alleged to constitute the interference

20   was independently wrongful." *Id.*; *see also Reeves v. Hanlon*, 33 Cal. 4th 1140, 1152–53 (2004)

21   ("to recover for a defendant's interference with an at-will employment relation, a plaintiff must

22   plead and prove that the defendant engaged in an independently wrongful act . . . *that induced* an

23   at-will employee to leave the plaintiff.") (emphasis added).[7] To be "independently wrongful,"

24

25   [7] The California Supreme Court in *Reeves* also made clear that with regards to the
     "independently wrongful act" requirement, it was applying "the same California standard
26   applicable to claims for intentional interference with prospective economic advantage." *Reeves*,
     33 Cal. 4th at 1152.

the interference must be "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply*, 29 Cal. 4th at 1158; *Reeves*, 33 Cal. 4th at 1152–53.

Here, Upper Deck's allegations regarding Ravensburger's "wrongful acts" consists of conduct it claims occurred *after* Mr. Miller left Upper Deck. And none of those alleged acts— conversion, copyright infringement or unfair competition—were the acts that allegedly induced Mr. Miller to leave Upper Deck.

Because Upper Deck has (again) failed to plead any independently wrongful act by Ravensburger in allegedly inducing Mr. Miller to leave Upper Deck, its inducement claim fails as a matter of law. The claim should be dismissed with prejudice.

### C.    The interference claim fails as a matter of law.

To state a claim for intentional interference with prospective economic relations, Upper Deck must allege: "(1) an economic relationship [with] some third party, with the probability of future economic benefit to [Upper Deck]; (2) [Ravensburger's] knowledge of the relationship; (3) intentional acts [by Ravensburger] designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm . . . proximately caused by the acts of [Ravensburger]." *Korea Supply*, 29 Cal. 4th at 1153. As with a claim for inducement of breach of contract, California law imposes an additional requirement where an at-will employment contract is at issue: the intentional act must be independently wrongful. *See* Order at 14; *see also Ixchel Pharma*, 9 Cal. 5th at 1148.

Upper Deck's new allegations in support of its interference claim are substantially identical to the allegations raised in support of the inducement claim discussed immediately above. *See* SAC ¶¶ 93-94. The interference claim fails as a matter of law for the same reasons as the inducement claim: Upper Deck has failed (once again) to adequately plead an independently wrongful act by Ravensburger. *See Supra* Part III.B. The claim must be dismissed with prejudice.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

### D. The UCL claim still fails as a matter of law.

#### 1. Upper Deck has not meaningfully identified the prongs underlying its UCL claim.

California's UCL "prohibits, and provides civil remedies for, unfair competition, which it defines as 'any unlawful, unfair or fraudulent business act or practice.'" *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 320 (2011). As the Court recognized when it dismissed the original UCL claim, to avoid dismissal, a plaintiff must "identify the prong(s) underlying its unfair competition claim." Order at 19 (quoting *United States ex rel. Integrated Energy, LLC v. Siemens Gov't Techs., Inc.*, No. SACV 15-01534 JVS (DFMx), 2016 WL 11743176, at *5 (C.D. Cal. June 13, 2016)).

The allegations of the SAC lay bare Upper Deck's failure to meaningfully follow the Court's guidance. These failures are fatal to Upper Deck's "renewed" UCL claim.

Although the claim is ostensibly raised against both Defendants, the SAC omits any allegation regarding Mr. Miller's purported violation of the UCL. Upper Deck does not "identify the prong(s) underlying its [UCL] claim" against Mr. Miller, let alone allege any facts supporting such an identification. SAC ¶ 110. The claim against Mr. Miller must be dismissed—this time with prejudice.

Upper Deck's amendment of the UCL claim against Ravensburger is also unavailing. Upper Deck added a single, conclusory allegation to the SAC: "Ravensburger has violated the 'unlawful' and 'unfair' prongs of the UCL." SAC ¶ 110; *see also* Marcelo Decl., Ex. 1. This is patently insufficient: this bare recital does not provide Ravensburger with "fair notice of the claims" alleged against it. *Nuvo Rsch. Inc. v. McGrath*, No. C 11-4006 SBA, 2012 WL 1965870, at *6 (N.D. Cal. May 31, 2012) (cleaned up). Upper Deck does not specify what conduct purportedly falls under the "unfair" prong versus the "unlawful" prong. Its sole allegation of wrongdoing under the UCL claim offers no insight. *See* SAC ¶ 110 (alleging that Ravensburger "used and disseminated" Upper Deck's "game design" to market Lorcana).

1    Upper Deck's ***repeated*** failure to provide any notice of the claims alleged against

2    Defendants is independent grounds for the dismissal of the UCL claim—with prejudice.

3    **2.    Upper Deck has not plausibly alleged "unfair" conduct by
         Ravensburger.[8]**

4    Even if the Court accepts Upper Deck's bare allegation that Ravensburger has violated

5    the "unfair" prong of the UCL, the UCL claim fails as a matter of law.

6    The law is well-settled in California: where, as here, a direct business competitor invokes

7    the "unfair" prong of the UCL, "the word 'unfair' . . . means conduct that threatens an incipient

8    violation of an antitrust law, or violates the policy or spirit of one of those laws because its

9    effects are comparable to . . . a violation of the law, or otherwise significantly threatens or harms

10   competition." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187

11   (1999) ("*Cel-Tech*"); *see also* SAC ¶¶ 1–2, 6, 58 (describing Ravensburger as a "direct

12   competitor" to Upper Deck).

13   Upper Deck's allegations do not come close to satisfying this test. The SAC is devoid of

14   any mention of anticompetitive conduct, like "horizontal price fixing, exclusive dealing, or

15   monopolization." *Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC*, 165 F. Supp. 3d 937, 953

16   (S.D. Cal. 2016). Instead, the SAC focuses on Upper Deck's alleged commercial harm that

17   results from the "use and dissemination" of an allegedly infringing, competing game. SAC

18   ¶ 110; *see also id.* ¶¶ 58–59, 71, 84, 104 (alleging lost sales, capital and revenue streams, lost

19   investment and resources, as well as loss of goodwill and popularity, all arising from the

20   development, dissemination, and marketing of Lorcana). But California law is clear: "[i]njury to

21   a competitor is not equivalent to injury to competition." *Cel-Tech*, 20 Cal. 4th at 186. Upper

22   Deck cannot prevail on an "unfair" UCL claim where it "only alleges harm to its own

23   commercial interests, rather than harm to competition." *Obesity Rsch. Inst.*, 165 F. Supp. 3d at

24   

25   ---
     [8] Because, as explained above, *see Supra* Part III.C.1, Upper Deck has not meaningfully included
26   Mr. Miller in its allegations of a UCL violation, the analysis here (and *infra* Part III.C.3) focuses
     on Ravensburger.

DEFENDANTS' PARTIAL MOTION TO
DISMISS SAC – 13
(No. 2:23-cv-01936)

953 (dismissing UCL claim). The "unfair" UCL claim must be dismissed.

### 3. Upper Deck has not plausibly alleged "unlawful" conduct by Ravensburger.

Upper Deck's claim also fails under the "unlawful" prong. The UCL's "unlawful" prong "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech*, 20 Cal. 4th at 180 (cleaned up); *see also Nazemi v. Specialized Loan Servicing, LLC*, 637 F. Supp. 3d 856, 865 (C.D. Cal. 2022), *appeal dismissed*, No. 22-56091, 2023 WL 8170736 (9th Cir. Feb. 24, 2023). Thus, if there is no violation of the predicate law, there can be no actionable claim under the UCL's "unlawful" prong. *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 718 (2001), *as modified* (Nov. 20, 2001).

Although invited to "clarify this on amendment," Upper Deck does not identify any specific violation of a statute or common law as a predicate for its UCL claim—it simply alleges (as before) that Ravensburger "used and disseminated" the "game design" for Rush of Ikorr to "promote and market" Lorcana. Order at 19; SAC ¶ 109. As explained below, "use and dissemination" of the game design are not elements of Upper Deck's conversion, inducement, or interference claims, leaving only the copyright claim.

Upper Deck's conversion claim hinges on the taking of physical documents or property rights in the game design; it cannot be based on the taking of an intangible idea. *See Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003) ("The tort of conversion does not apply to ideas."). But Upper Deck does not allege that Ravensburger used Upper Deck's physical documents to "promote and market [Lorcana]." *See generally,* SAC. And allegations that Ravensburger converted Upper Deck's property rights in the Rush of Ikorr game design are preempted by the Copyright Act for the same reason as the UCL claim (discussed *infra* Part

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1   III.D.3).[9]

2       Upper Deck's tortious inducement and interference claims are also completely

3   disconnected from the allegation that Ravensburger "used and disseminated" the Rush of Ikorr

4   game design. *See* SAC ¶¶ 74–95. Both claims require that the alleged conduct that induces a

5   breach or is interference to be independently wrongful. *See Reeves*, 33 Cal. 4th at 1152–53;

6   *Crown Imports*, 223 Cal. App. 4th at 1404. Upper Deck does not plausibly allege that the "use or

7   dissemination" of the Rush of Ikorr game design was the act that somehow induced Mr. Miller to

8   breach or terminate the Agreements.[10]

9       That leaves the allegation of copyright infringement as the only possible predicate for the

10  UCL claim. If so, the UCL claim must be dismissed because it is preempted.

11      The Copyright Act preempts state law claims where (1) "the plaintiff's work 'come[s]

12  within the subject matter of copyright'" and (2) "the state law grants 'legal or equitable rights

13  that are equivalent to any of the exclusive rights within the general scope of copyright.'" *Editions*

14  *Ltd. W.,* 786 F.3d at 760. Here, Upper Deck alleges that Ravensburger's "unlawful" conduct

15  constituted the use of Upper Deck's "game design" and alleges those game designs are

16  protectible under the Copyright Act and the subject of copyright registrations. SAC ¶ 97, 109.

17  Thus, the first element of preemption is met.

18      As to the second element, the Copyright Act grants rights to "reproduce the copyrighted

19  work," "to prepare derivative works," "to distribute copies" of the work to the public, and "to

20  display the copyrighted work publicly." *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1213

21  _____

22  [9] Namely, Upper Deck alleges its game design is protected by copyright and its allegations that
    Ravensburger used those designs to create Lorcana, or distributed a game similar to Rush of Ikorr,

23  are equivalent to claims for copyright infringement. SAC ¶ 97; *see Ryan v. Editions Ltd. W., Inc.*,
    786 F.3d 754, 760 (9th Cir. 2015); *Melchior*, 106 Cal. App. 4th at 793.

24  [10] The UCL claim also cannot be premised on the inducement or interference claims because, as
    discussed above *supra* Part III.B, Upper Deck fails to allege the required "wrongful act" element

25  of both claims and so neither claim is sufficiently plead. *See Warner v. Tinder Inc.*, 105 F. Supp.
    3d 1083, 1095 (C.D. Cal. 2015) ("Where the predicate claims on which a plaintiff's UCL claim

26  are based fail, the UCL claim fails as well.").

DEFENDANTS' PARTIAL MOTION TO
DISMISS SAC – 15
(No. 2:23-cv-01936)

(9th Cir. 1998) (citing 17 U.S.C. § 106). In other words, it grants rights to do exactly as Upper Deck alleges: to "use and disseminate" a work. SAC ¶ 109; *see also Kodadek*, 152 F.3d at 1212–13 (UCL claim preempted by Copyright Act where allegations supporting claim involved releasing and selling goods "derived from" a copyrighted work and so were based on "rights that are equivalent to those protected by" federal copyright laws); *Balik v. Spiral Toys Inc.*, No. CV 15-8112-GW(PLAX), 2016 WL 7496134, at *5 (C.D. Cal. Feb. 1, 2016) (UCL claim preempted because allegations of "unlawful distribution of [a] copyrighted work" were equivalent to those provided by the Copyright Act); *Melchior*, 106 Cal. App. 4th at 793 (conversion claim based on allegation that defendant "used work authored by [the plaintiff] and distributed works derived therefrom to the public" was "the equivalent of a copyright claim" and so was preempted).

The gravamen of Upper Deck's UCL claim—using and disseminating its copyrighted works—is essentially a copyright claim. The claim is thus preempted and should be dismissed.

### E.    The amended claims should be dismissed with prejudice.

Upper Deck's "renewed" claims should be dismissed with prejudice. "Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008). Amendment is futile where "no set of facts can be proved . . . that would constitute a valid and sufficient claim or defense." *Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018) (cleaned up). And, the Court's "discretion to deny leave to amend is 'particularly broad' where the plaintiff has previously amended." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013); *see also Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008).

Here it is clear that further amendment of the "renewed" claims would be futile. Despite having the benefit of the Court's guidance in the Order, the SAC—Upper Deck's third iteration of its complaint—contains significant ***recurring*** deficiencies.

As explained above, *see Supra* Part III.A, the fraudulent misrepresentation claim fails as a matter of law because Upper Deck does not allege that it relied upon or was harmed by

1  Mr. Miller's proffered reason for terminating the Agreements. The facts of reliance and harm are

2  uniquely within Upper Deck's knowledge; that they are omitted from the SAC is telling. The

3  claim also fails because the SAC's allegations reveal Mr. Miller's statement was, in fact, true: he

4  ceased working as a freelance game designer to become a full-time employee at Ravensburger.

5      The inducement and interference claims cannot be saved by amendment because Upper

6  Deck cannot plausibly allege anything independently wrongful about the conduct that allegedly

7  comprises inducement/interference—Ravensburger's hiring of Mr. Miller.

8      Amendment of the UCL claim is also futile. Upper Deck has not—because it cannot—

9  identified the prongs of the UCL allegedly violated by Mr. Miller. *See supra* Part III.D.1. And its

10  attempt to state a claim for an "unfair" and "unlawful" violation of the UCL against

11  Ravensburger fails as a matter of law, because it has not alleged any harm to competition and the

12  UCL claim is preempted by the Copyright Act. *See supra* Parts III.D.2 and III.D.3. These defects

13  cannot be cured by further amendment.

14      Courts have dismissed claims without leave to amend under similar circumstances and

15  this Court should do the same. *See Larson Motors, Inc. v. Gen. Motors, LLC*, No. C21-1367-

16  JCC, 2022 WL 952182, at *3 (W.D. Wash. Mar. 30, 2022) (dismissing claims with prejudice

17  where plaintiffs were unable to "cure the defects" after being granted leave to amend); *LeGrone

18  v. King Cnty.*, No. 2:23-CV-01102-LK, 2024 WL 2251599, at *3 (W.D. Wash. May 17, 2024)

19  (denying leave to amend where amended complaint failed to state a claim, despite plaintiff

20  having the benefit of a court order explaining the defects in the original complaint); *Kendall*,

21  518 F.3d at 1051–52 (finding amendment futile where amended complaint contained same

22  defects as original complaint).

23      //

24      //

25      //

26

DEFENDANTS' PARTIAL MOTION TO
DISMISS SAC – 17
(No. 2:23-cv-01936)

1  **IV.    Conclusion**

2          For the foregoing reasons, Defendants respectfully request that the Court grant

3   Defendants' motion and dismiss Upper Deck's claims for fraudulent misrepresentation,

4   inducement of breach of contract, interference with prospective economic relationships, and

5   violation of the UCL without leave to amend.

6

7                           **LCR 7(e)(6) CERTIFICATION**

8   I certify that this memorandum contains 5,933 words, in compliance with the Local Civil Rules.

9

10  Dated: September 27, 2024                    By: s/ *David A. Perez*
                                                 _____
11                                               David A. Perez, Bar No. 43959
                                                 Christian W. Marcelo, Bar No. 51193
12                                               Heath L. Hyatt, Bar No. 54141
                                                 **Perkins Coie LLP**
13                                               1201 Third Avenue, Suite 4900
                                                 Seattle, Washington 98101-3099
14                                               Telephone: +1.206.359.8000
                                                 Facsimile: +1.206.359.9000
15                                               DPerez@perkinscoie.com
                                                 CMarcelo@perkinscoie.com
16                                               HHyatt@perkinscoie.com

17                                               Alisha C. Burgin (*admitted pro hac vice*)
                                                 **Perkins Coie LLP**
18                                               1888 Century Park East, Suite 1700
                                                 Los Angeles, California 90067-1721
19                                               Telephone: +1.310.788.9900
                                                 Facsimile: +1.310.788.3399
20                                               ABurgin@perkinscoie.com

21                                               Torryn T. Rodgers (*admitted pro hac vice*)
                                                 **Perkins Coie LLP**
22                                               505 Howard Street, Suite 1000
                                                 San Francisco, California 94105
23                                               Telephone: +1.415.344.7000
                                                 Facsimile: +1.415.344.7050
24                                               TRodgers@perkinscoie.com

25                                               *Attorneys for Defendants*
                                                 *RYAN MILLER and RAVENSBURGER NORTH*
26                                               *AMERICA, INC.*

DEFENDANTS' PARTIAL MOTION TO
DISMISS SAC – 18
(No. 2:23-cv-01936)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000