|   |   |
|---|---|
| 1 |   |
| 2 |   |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| THE UPPER DECK COMPANY, | CASE NO. C23-1936-KKE |
|---|---|
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT |
| v. |  |
| RYAN MILLER et al., |  |
| Defendants. |  |

This is a copyright infringement case between competitors in the trading card game industry. The Upper Deck Company ("Upper Deck") alleges its former contractor, Defendant Ryan Miller, went to work for its competitor, Defendant Ravensburger North America, Inc. ("Ravensburger"), under false pretenses and used confidential, copyrighted material obtained during his employment with Upper Deck to create a new infringing game with Ravensburger. The Court granted in part Defendants' previous motion to dismiss and allowed Upper Deck limited leave to amend. Upper Deck amended its complaint and Defendants now move to dismiss each of the amended claims: fraudulent misrepresentation, inducing breach of contract and interfering with economic relations, and violation of California's unfair competition law. The Court grants in part Defendants' motion (Dkt. No. 63), and finds that both of the tortious interference claims fail for lack of any alleged wrongful act and that the unfair competition claim fails to allege a recognized unfair act.

## I. BACKGROUND

In 2018, Miller entered into an agreement ("2018 Agreement") with Upper Deck wherein Miller would attend a gaming summit to brainstorm and provide feedback on new games and game mechanics. Dkt. No. 62 ¶ 12. Rush of Ikorr was created at this gaming summit. *Id.* ¶ 14. In 2019, Miller entered into another agreement with Upper Deck ("2019 Agreement") wherein Miller would be the lead game designer for Rush of Ikorr and would be paid upon completion of specific milestones, with a timeline running through March 2021. *Id.* ¶¶ 15–16. In October 2020, Miller terminated the 2019 Agreement and, around that time, began working with Ravensburger. *Id.* ¶¶ 21, 23. In September 2022, Ravensburger announced the Disney Lorcana game and identified Miller as the "product manager and co-designer" of the game. *Id.* ¶ 27.

In June 2023, Upper Deck filed this case against Defendants in San Diego Superior Court and Defendants removed the case to the Southern District of California. Dkt. No. 1. The case was transferred to this Court under 28 U.S.C. § 1404(a). Dkt. No. 29-1. Defendants then moved to dismiss every cause of action except the breach of the contract claim for failure to state a claim. Dkt. No. 46. The Court granted in part and denied in part the motion. Dkt. No. 58. The Court found that it had subject matter jurisdiction, California law should apply, and dismissed with prejudice the breach of fiduciary duty and conversion claims against Miller. *Id.* The Court also dismissed with leave to amend the fraudulent misrepresentation claim against Miller, the inducing breach of contract and intentional interference claims against Ravensburger, and the unfair competition claim against both Defendants. *Id.* Upper Deck amended its complaint. Dkt. No. 62 ("SAC"). Defendants now move to dismiss those same four causes of action again, claiming each amended claim fails to cure the deficiencies identified in the Court's prior order. Dkt. No. 63. Defendants responded (Dkt. No. 68) and Upper Deck replied (Dkt. No. 69). Neither party requested oral argument and the matter is ripe for the Court's consideration.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT - 2

## II. ANALYSIS

**A.    Legal Standard on Motion to Dismiss**

Dismissal under Federal Rule of Civil Procedure 12(b)(6) may be based on either the lack of a cognizable legal theory or the "absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (cleaned up). At this stage, the Court accepts as true all factual allegations in the complaint and construes them in the light most favorable to the nonmoving party. *Gonzalez v. Google LLC*, 2 F.4th 871, 885 (9th Cir. 2021), *rev'd sub nom on other grounds by Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023) (per curiam). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see* Fed. R. Civ. P. 8(a)(2) (a plaintiff must make a "short and plain statement of the claim showing that the pleader is entitled to relief"). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "If a motion to dismiss is granted, a court should normally grant leave to amend unless it determines that the pleading could not possibly be cured by allegations of other facts." *Chinatown Neighborhood Ass'n v. Harris*, 33 F. Supp. 3d 1085, 1093 (N.D. Cal. 2014).

**B.    The Fraudulent Misrepresentation Claim Survives.**

In California, a claim for fraudulent misrepresentation (Cal. Civ. Code §§ 1709–1710) requires:

> (1) the defendant represented to the plaintiff that an important fact was true; (2) that representation was false; (3) the defendant knew that the representation was false when the defendant made it, or the defendant made the representation recklessly and without regard for its truth; (4) the defendant intended that the plaintiff rely on the representation; (5) the

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT - 3

plaintiff reasonably relied on the representation; (6) the plaintiff was harmed; and (7) the plaintiff's reliance on the defendant's representation was a substantial factor in causing that harm to the plaintiff.

*Thomas v. Regents of Univ. of California*, 97 Cal. App. 5th 587, 637 (Cal. Ct. App. 2023) (cleaned up).  As this claim sounds in fraud, it is also subject to the heightened pleading requirement of Federal Rule of Civil Procedure 9(b) which requires "the who, what, when, where, and how of the misconduct charged, including what is false or misleading about a statement, and why it is false." *Gibson v. Al Jazeera Int'l (USA) LLC*, No. 22-CV-04153-LB, 2022 WL 16949940, at *7 (N.D. Cal. Nov. 14, 2022) (quoting *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1145 (9th Cir. 2021)) (applying Rule 9(b) pleading standard to fraudulent misrepresentation claim).

The Court previously dismissed the fraudulent misrepresentation claim because Upper Deck did not allege that the Miller's misrepresentation was false.  Dkt. No. 58 at 10.  Upper Deck amended the claim and Miller now argues it should be dismissed again because Upper Deck does not allege facts to support that the alleged misrepresentation was false and fails to plead reliance or harm.  Dkt. No. 63 at 10–13.  The Court finds Upper Deck properly pleaded each of these elements.

Upper Deck properly alleges the falsity of the alleged misrepresentation.  In the SAC, Upper Deck alleges Miller made one misrepresentation:

> Miller falsely advised Upper Deck's in-house gaming employees such as Mark Shaunessy and Bubby Johanson that he was ending his contract to obtain or find more traditional full-time employment with benefits so he was discontinuing his work as a freelance game designer. Miller's true reason for ending his contract with Upper Deck was to capitalize on his work for Upper Deck by applying it to a TCG [trading card game] he would develop with Ravensburger.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT - 4

Dkt. No. 62 ¶ 64.[1]  Miller argues that "Upper Deck offers no factual allegations to support this conclusion" and that because he did gain full-time employment with Ravensburger, the statement could not have been false.  Dkt. No. 63 at 11.  Upper Deck responds that the new allegations sufficiently allege falsity and that Miller's ultimate employment with Ravensburger "does not make his statements about his motivation and reason for leaving Upper Deck true."  Dkt. No. 68 at 8.  The Court agrees with Upper Deck.  The SAC identifies an allegedly false statement, when and to whom it was made, and why Upper Deck believes that statement was false.  Miller's ultimate employment with Ravensburger does not impact what Miller's true motivations for leaving Upper Deck were and whether what he represented to Upper Deck was true.

Turning to whether Upper Deck sufficiently alleges reliance and harm, Upper Deck first argues these challenges have been waived.  Dkt. No. 68 at 8.  It is true that Miller has moved to dismiss this claim three times now (Dkt. Nos. 20, 46, 63) and only in the third motion to dismiss raises issues with the reliance and harm elements of the fraudulent misrepresentation claim.  *See* Dkt. No. 20 at 36–37, Dkt. No. 46 at 18.  However, such delay does not waive an argument, it only limits the argument from being raised in a later motion to dismiss.  Fed. R. Civ. P. 12(g)(2).  The Ninth Circuit allows district courts to consider such arguments even when they are wrongly brought in a later Rule 12(b)(6) motion because "relegating defendants to the three procedural avenues specified in Rule 12(h)(2) can produce unnecessary and costly delays, contrary to the direction of Rule 1."  *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318–19 (9th Cir. 2017).  Accordingly, without evidence that this argument was withheld for the sole purpose of delay or other strategic advantage, and in the interest of judicial economy, the Court will consider Miller's arguments on reliance and harm.

---

[1] The remainder of the allegations under this cause of action in the SAC are about Miller's concealment, which Defendants do not challenge as insufficient.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT - 5

Miller argues that Upper Deck's allegations regarding reliance and harm only support the fraudulent concealment subpart of the fraud claim, not the fraudulent misrepresentation subpart. Dkt. No. 63 at 12. Upper Deck responds that this argument was already rejected and that the SAC "readily alleges that the false representation of the reason for his departure, much like his concealing his true reasons for leaving, were reasonably relied on and a substantial factor in causing harm." Dkt. No. 68 at 9. The Court agrees with Upper Deck. The Court previously determined the fraudulent concealment claim sufficiently alleged reliance (Dkt. No. 58 at 13) and those allegations are not all limited to Miller's concealment of facts but are naturally read to also refer to the alleged misrepresentation. *See* Dkt. No. 62 ¶ 69 ("[H]ad Upper Deck known that Miller was talking to and/or potentially working with Ravensburger, or alternatively, known Ravensburger was later planning to begin the development of a TCG nearly identical to Rush of Ikorr, Upper Deck would have responded differently."). Likewise, Upper Deck alleges that "the concealment and related activities by Miller and Ravensburger" were a substantial factor in the harm of having "a competing TCG that copies the essence of Rush of Ikorr." *Id.* ¶ 71. Miller asks the Court to read the reliance and harm allegations too narrowly, defying the standard on a motion to dismiss. *See In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1145 (C.D. Cal. 2008) ("A court reads the complaint as a whole…rather than isolating allegations and taking them out of context.").

Upper Deck sufficiently pleads a fraudulent misrepresentation claim.

**C.    The Tortious Interference Claims Fail to Allege an Independently Wrongful Act.**

In California, the elements of a claim for interference with a contract are: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting

damage." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 791 P.2d 587, 589–90 (Cal. 1990). For a claim of inducing a breach of an at-will contract, like here, Upper Deck "must allege that [Ravensburger] engaged in an independently wrongful act." *Ixchel Pharma, LLC v. Biogen, Inc.*, 470 P.3d 571, 580 (Cal. 2020). Similarly, the elements of a claim for intentional interference with prospective economic relations are: (1) an economic relationship between the plaintiff and some third party; (2) defendant's knowledge of the relationship; (3) intentional wrongful acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant. *Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008) (cleaned up). The Court previously dismissed these claims for failing to plead an independently wrongful act. Dkt. No. 58 at 14–15 ("Upper Deck only alleges that Ravensburger hired Miller away from them and caused Miller to breach the confidentiality provisions of the agreements. These are not independently wrongful acts."). Ravensburger argues Upper Deck's amended allegations of an independently wrongful act still fail. Dkt. No. 63 at 13–16. The Court will first explain what an "independently wrongful act" requires[2] and then determine whether any of Upper Deck's amended allegations are sufficient.

The parties agree that an "independently wrongful act" means conduct that violates "some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Ixchel Pharma*, 470 P.3d at 576; *see* Dkt. No. 63 at 16, Dkt. No. 68 at 10. But the parties disagree about the relationship between the interfering conduct and the wrongful act. Ravensburger avers the interfering conduct, itself, must have been wrongful. Dkt. No. 63 at 15. Upper Deck responds

---

[2] The parties agree that the requirements for an independently wrongful act are the same under both causes of action. *See* Dkt. No. 63 at 16, Dkt. No. 68 at 11–12. The Court agrees and its reasoning in this section applies to both tortious interference claims, regardless of whether the term induce or interfere is used to describe the tortious act. *Reeves v. Hanlon*, 95 P.3d 513, 520 (Cal. 2004).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT - 7

that interference "coupled with" or "occasioned by" a wrongful act is sufficient, and that the interference can be "a vessel" for the wrongful conduct. Dkt. No. 68 at 10–11.

Ravensburger is correct: the interference must have been done "through wrongful means." *See Ixchel Pharma,* 470 P.3d at 590; *Stevenson Real Est. Servs., Inc. v. CB Richard Ellis Real Est. Servs., Inc.*, 42 Cal. Rptr. 3d 235, 243 (Cal. Ct. App. 2006) ("[P]laintiff must plead and prove that the conduct alleged to constitute the interference was independently wrongful, i.e., unlawful for reasons other than that it interfered with a prospective economic advantage."). Contrary to Upper Deck's claims, the wrongful act cannot solely occur before or after the interference, and interference "coupled with" a wrongful act is insufficient. This conclusion is consistent with the case cited by Upper Deck where the complaint sufficiently alleged an independently wrongful act: "Hertz used misappropriated data—including confidential human resource data—to [recruit Plaintiff's employees]."[3] *See Neutron Holdings, Inc. v. Hertz Corp.*, No. 23-CV-00934-JSC, 2023 WL 3919465, at *7 (N.D. Cal. June 8, 2023).

Upper Deck must plead that the interfering act, here, Ravensburger hiring Miller, was done through some wrongful means. But none of Upper Deck's allegations of Ravensburger's wrongful acts are about its hiring of Miller. Instead, Upper Deck alleges that Ravensburger "used the hiring [of Miller] as a means of accomplishing other illegal acts[.]" Dkt No. 68 at 11, Dkt. No. 62 ¶ 81. Upper Deck also alleges that Ravensburger hired Miller away from Upper Deck in order to infringe its copyrights and use its confidential information. Dkt. No. 62 ¶¶ 80–81. But these allegations go to a wrongful motive which is not a wrongful act. *See Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 953 (Cal. 2003) ("An act is not independently wrongful merely because

---

[3] Upper Deck also cites *Insight Psychology & Addiction Inc. v. Inpsycht Psychological Services., PC*, No. SACV221304JVSKESX, 2023 WL 2799060, at *7 (C.D. Cal. Feb. 16, 2023). That case was decided on an unopposed motion for default judgment and does not meaningfully analyze the independently wrongful action element.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT - 8

defendant acted with an improper motive."). Upper Deck fails to explain how Ravensburger violated a "constitutional, statutory, regulatory, common law, or other determinable legal standard" when it hired Miller away from Ravensburger. *Id.* at 954. Accordingly, Upper Deck's inducing breach of contract and intentional interference with economic relations claims fail.

Because Upper Deck's tortious interference claims are based on a flawed legal theory and not a failure to plead sufficient facts, amendment would be futile and the tortious interference claims are dismissed without leave to amend. *Tremblay v. OpenAI, Inc.*, No. 23-CV-03223-AMO, 2024 WL 3640501, at *2 (N.D. Cal. July 30, 2024) ("As the defect lies in the legal theory, not the factual allegations, the dismissal is without leave to amend.") (quoting *Brown v. Food for Life Baking Co.*, 658 F. Supp. 3d 732, 740 (N.D. Cal. 2023)); *see also Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.").

### D. The UCL Claim Against Miller and Ravensburger Can Proceed in Part.

California's unfair competition law (CAL. BUS. & PROF. CODE § 17200) ("UCL"), prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [the false advertising law (§ 17500 *et seq*.)]." CAL. BUS. & PROF. CODE § 17200. The statute "establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent. In other words, a practice is prohibited as unfair or deceptive even if not unlawful and vice versa." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 540 (Cal. 1999) (cleaned up). The Court previously dismissed Upper Deck's UCL claim for failing to identify which prongs of the statute it was invoking. Dkt. No. 58 at 18–19. Upon amendment, Upper Deck adds the allegation: "Accordingly, Ravensburger has violated the 'unlawful' and 'unfair' prongs of the UCL." Dkt.

No. 62 ¶ 110. Defendants now move to dismiss this claim against Miller for failure to identify the relevant UCL prongs, and against Ravensburger for failing to specify what conduct falls under which prong, failing to allege unfair conduct, and failing to allege unlawful conduct. Dkt. No. 63 at 17–21.

1. <u>The Court will analyze the "inadvertently omitted" UCL unlawful and unfair claims against Miller.</u>

Defendants ask the Court to dismiss the UCL claim against Miller because, apart from the cause of action heading, the new allegations identifying the relevant UCL prongs do not mention Miller. Dkt. No. 63 at 17. Upper Deck responds that "Upper Deck inadvertently omitted the prongs applicable to Defendant Miller, but they should be the same with the addition of fraud given the fraud cause of action against him. Upper Deck seeks leave to amend one more time on this issue to plead the prongs applying to Miller specifically." Dkt. No. 68 at 12 n.2.

First, the Court denies Upper Deck's request to add allegations regarding the "fraud" prong of the UCL as to Miller. *See* Dkt. No. 68 at 12 n.2. That omission, whether inadvertent or not, is inexcusable considering the Court specifically ordered Upper Deck to identify the relevant prongs of the UCL under which its claims arose. Dkt. No. 58 at 19. Allowing Upper Deck to add this new prong based on a footnote in its opposition would prejudice Defendants who would be forced to move to dismiss again. *Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999) ("Liberality in granting a plaintiff leave to amend is subject to the qualification that the amendment not cause undue prejudice to the defendant, is not sought in bad faith, and is not futile."). Such amendment would also be futile because "fraudulent" under the UCL "requires a showing that members of the public are likely to be deceived." *Puentes v. Wells Fargo Home Mortg., Inc.*, 72 Cal. Rptr. 3d. 903, 909 (Cal. Ct. App. 2008) (cleaned up). Upper Deck has not alleged that any of Miller's alleged fraudulent misrepresentations or omissions were known by the public. *See Capella*

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT - 10

*Photonics, Inc. v. Cisco Sys., Inc.*, 77 F. Supp. 3d 850, 865 (N.D. Cal. 2014) (dismissing fraudulent UCL claim because "Cisco does not allege that members of the public have been deceived by Capella's alleged fraudulent misrepresentations….Indeed, Cisco does not even allege that members of the public are aware of Capella's misrepresentations").

As to adding Miller to the unlawful and unfair prongs asserted against Ravensburger, while it is regrettable that Upper Deck failed to identify this omission despite three opportunities to amend its complaint (Dkt. Nos. 1, 12, 62), for efficiency and thoroughness the Court will analyze the UCL claim as if Upper Deck had used the term "Defendants" instead of solely "Ravensburger" in its UCL cause of action. *See* Dkt. No. 62 ¶¶ 109, 110.  To the extent either claim survives, the Court will grant limited leave to amend to edit the allegations to apply to "Defendants," not only Ravensburger.  *See id.*

    2.  <u>The unlawful UCL claim survives.</u>

The unlawful prong of the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech*, 973 P.2d at 539–40 (cleaned up).  However, "a common law violation such as breach of contract is insufficient" to support a claim under the unlawful prong of the UCL. *Shroyer*, 622 F.3d at 1044.  Defendants argue that because the only alleged UCL violations in the SAC are about Ravensburger's use and dissemination of Upper Deck's confidential information, and such acts "are not elements of Upper Deck's conversion, inducement, or interference claims," and the copyright claim is preempted, Upper Deck fails to "identify any specific violation of a statute or common law as a predicate for its UCL claim[.]" Dkt. No. 63 at 19.  But Defendants ignore Upper Deck's incorporation of the other causes of action into its UCL claim.  Dkt. No. 62 ¶ 108.  Thus, comparing one allegation made under the UCL cause of action with the elements of the other

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT - 11

causes of action is not the correct analysis. Instead, the question is whether the remaining non-copyright[4] causes of action can support a UCL unlawful claim.

The sole remaining non-copyright claim against Ravensburger is a conversion claim. *See* Dkt. No. 62. Neither party has sufficiently briefed whether a conversion claim can be the basis for an unlawful UCL claim. *See generally* Dkt. Nos. 63, 68, 69. Because, at least under certain circumstances, conversion can support an unlawful UCL claim, the Court will not dismiss this claim at this point. *See U.S. Legal Support, Inc. v. Hofioni*, No. CIV. S-13-01770 LKK, 2013 WL 6844756, at *13 (E.D. Cal. Dec. 20, 2013) (holding that trade secret appropriation and conversion are a "sufficient basis for alleging 'unlawful' conduct under the UCL"). *But see Shroyer*, 622 F.3d at 1044 (holding that "a common law violation such as breach of contract is insufficient" to support an unlawful UCL claim but that "a violation of common law can support a § 17200 claim, provided that the conduct is also unlawful, unfair, or fraudulent").

Likewise, because the causes of action against Miller are incorporated into the UCL claim and Defendants do not argue the fraudulent misrepresentation or fraudulent concealment claims cannot support an unlawful UCL claim, the unlawful UCL claim against Miller also survives.

3. <u>Upper Deck fails to allege an unfair act by Miller or Ravensburger under the UCL.</u>

Unlike the UCL unlawful prong's "borrowing" analysis, the UCL unfair prong analysis looks at what Upper Deck alleges as unfair conduct and then determines "whether the challenged conduct is unfair within the meaning of the unfair competition law." *Cel-Tech*, 973 P.2d at 542. In *Cel-Tech*, the California Supreme Court held

> When a plaintiff who claims to have suffered injury from a direct competitor's "unfair" act or practice invokes section 17200, the word "unfair" in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws

---

[4] Upper Deck agrees that its copyright claim cannot form the basis of its UCL claim. Dkt. No. 68 at 13.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT - 12

> because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.

973 P.2d at 544. Upper Deck alleges Defendants "unconscionably and without authorization, used and disseminated Upper Deck's confidential and proprietary game design to promote and market" Lorcana. Dkt. No. 62 ¶ 109. Applying the *Cel-Tech* test, Upper Deck's UCL unfair claim against Defendants[5] does not allege any anticompetitive conduct or significant harms to competition and is dismissed.

Upper Deck argues that the *Cel-Tech* test is only one way to find unfair conduct and that "courts find actionable analogous types of claims involving trade secret violations and misappropriation of confidential information." Dkt. No. 68 at 12. But the cases cited in support of this argument are inapposite. The post-*Cel-Tech* cases only hold that "misappropriation of trade secrets in violation of [California Uniform Trade Secrets Act] can form the predicate" for an unfair UCL claim. *DJO Glob., Inc. v. Glader*, No. 316CV02208CABNLS, 2016 WL 11622009, at *8 (S.D. Cal. Dec. 22, 2016) (quoting *U.S. Legal Support, Inc. v. Hofioni*, No. CIV. S-13-01770 LKK, 2013 WL 6844756, at *14 (E.D. Cal. Dec. 20, 2013)). There is no trade secret misappropriation claim here that could support finding a sufficiently plead unfair act. And Upper Deck's only support for the argument that misappropriation of confidential information more broadly can be an unfair act is a case decided before *Cel-Tech* established the current test for "unfair" under the UCL. *See Courtesy Temp. Serv., Inc. v. Camacho*, 272 Cal. Rptr. 352, 360 (Cal. Ct. App. 1990).

Again, because Upper Deck's legal theory is flawed, leave to amend would be futile and is denied.

---

[5] Upper Deck does not dispute that Defendants are its competitors. *See generally* Dkt. No. 68.

### III. CONCLUSION

For these reasons, Defendants second motion to dismiss is GRANTED IN PART and DENIED IN PART. Dkt. No. 68.

The inducing breach of a written contract claim and intentional interference with prospective economic relations claims are dismissed with prejudice.

The UCL claim under the unfair prong is dismissed with prejudice.

The remainder of the motion to dismiss is DENIED.

Upper Deck can amend its complaint to remove the dismissed causes of action and change "Ravensburger" to "Defendants" under its UCL claim's unlawful prong. Dkt. No. 62 ¶¶ 109, 110. Upper Deck cannot allege a UCL fraud claim against Miller. Upper Deck shall amend the complaint by December 27, 2024.

Dated this 16th day of December, 2024.

Kymberly K. Evanson
United States District Judge