UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THE UPPER DECK COMPANY,<br><br>　　　　　Plaintiff(s),<br><br>　v.<br><br>RYAN MILTON,<br><br>　　　　　Defendant(s). | CASE NO. C23-1936-KKE<br><br>ORDER ON MOTIONS TO EXCLUDE EXPERT WITNESSES |

  Plaintiff Upper Deck Company ("Upper Deck") sued Defendants Ryan Miller ("Miller") and Ravensburger for multiple claims arising from two trading card games ("TCGs"), known as Rush of Ikorr and Lorcana. The Court previously granted Miller and Ravensburger's motion for summary judgment as to copyright infringement, conversion, fraud, and unfair competition, which led to Ravensburger's dismissal from this suit. Dkt. No. 184. In its order, the Court requested the parties summarize which of the parties' previously pending motions to exclude, if any, remain at issue given the sole remaining breach of contract claim at issue in this case. *Id*. at 27. Now before the Court are Miller's motions to exclude Plaintiff's expert witnesses Dr. Roberto Cavazos (Dkt. No. 175) and Dr. Ian Bogost (Dkt. No. 177), Plaintiff's motion to exclude Miller's expert witness James Pampinella (Dkt. No. 116), and the parties' updates on the relevance of the motions to exclude (Dkt. No. 187). On September 4, 2025, the Court heard oral argument on the motions.

ORDER ON MOTIONS TO EXCLUDE EXPERT WITNESSES - 1

Dkt. No. 170. The Court also held a status conference with the parties at which additional argument was heard on October 15, 2025. Dkt. No. 202.

For the reasons detailed below, Miller's motion to exclude Dr. Bogost is denied; Upper Deck's motion to exclude Pampinella is denied; and Miller's motion to exclude Dr. Cavazos is granted.

## I. BACKGROUND

The facts in this case have already been set forth in several orders (*see* Dkt. Nos. 58, 79, 184), and the Court will not repeat them here. In support of its lawsuit, Upper Deck has disclosed expert reports by Dr. Roberto Cavazos, who opines on copyright damages, (Dkt. No. 176) and Dr. Ian Bogost, who opines on trading card games ("TCGs") (Dkt. No. 178). In turn, Miller produced an expert report by James Pampinella, who opines on actual and economic damages suffered by Upper Deck because of Miller and Ravensburger's alleged actions. Dkt. Nos. 183-1, 183-2.

## II. DISCUSSION

Federal Rule of Evidence 702 permits expert testimony so long as the expert is qualified, and the expert's testimony is both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). "To qualify as an expert, a witness must have 'knowledge, skill, experience, training, or education' relevant to such evidence or fact in issue." *United States v. Chang*, 207 F.3d 1169, 1172 (9th Cir. 2000) (citing Fed. R. Evid. 702). "The reliability inquiry is a 'flexible one.'" *Est. of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999)). In assessing reliability, courts should focus "on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. When considering expert testimony based on "specialized knowledge" other than science, courts construe Rule 702 liberally. *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000). "Shaky but admissible evidence is to be attacked by cross examination, contrary

evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010).

**A.    Miller's Motion to Exclude Plaintiff's Expert Dr. Bogost is Denied.**

Dr. Ian Bogost serves as a professor of Film and Media Studies as well as Computer Science and Engineering at Washington University in St. Louis and enjoys international recognition "as a key figure in game design and game studies." Dkt. No. 178 at 8. Miller seeks to exclude Dr. Bogost's testimony, arguing that he is not qualified to opine on TCGs, that his methods are unreliable, and that he offers improper legal opinions. *See* Dkt. No. 177 at 1. In their post-summary judgment statements, the parties also disagree as to whether Section E of Dr. Bogost's report remains relevant. Dkt. No. 187 at 2, 8–9.

1. <u>Dr. Bogost is qualified to testify about TCGs.</u>

The Court notes that Dr. Bogost's CV has a marked video game slant. Dkt. No. 178 at 56–125. However, his CV also contains several indications of general game expertise: throughout his career, Dr. Bogost has written several publications on games and game theory generally, taught multiple university courses on game design, and presented at several conferences on games. *See id.* And while Miller argues that Dr. Bogost has "no experience designing or developing" TCGs, during his deposition, Dr. Bogost could not recall whether he had play-tested TCGs previously, or if he had helped develop game mechanics for TCGs. Dkt. No. 177 at 7–8; Dkt. No. 178 at 259. Moreover, when asked about his lack of TCG-specific academic credentials, Dr. Bogost explained that such degrees probably do not exist. Dkt. No. 178 at 265.

Miller argues that because Dr. Bogost's testimony was previously excluded in a case about a videogame, he is unqualified to opine on TCGs. Dkt. No. 177 at 8 (citing *Hayden v. 2K Games, Inc.*, No. 17-cv-2635, 2022 WL 2662865, at *4 (N.D. Ohio July 11, 2022)). But in *Hayden*, specific portions of Dr. Bogost's testimony were excluded on grounds other than his qualifications.

ORDER ON MOTIONS TO EXCLUDE EXPERT WITNESSES - 3

*Id.* Given Dr. Bogost's ample experience in the field of games, game design, and game review—and because his opinions are based on specialized knowledge other than science—the Court finds that Dr. Bogost meets the minimum bar set by Rule 702 to qualify as an expert on TCGs. *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1043 (2d Cir. 1992) (otolaryngologist's lack of subject-matter specialty in environmental medicine did not preclude him from providing expert opinions on environmental medicine issues); *Hankey*, 203 F.3d at 1168–70 (finding "gang expert" testimony admissible and explaining that Rule 702 is construed liberally when considering admissibility of expert testimony based on "other specialized knowledge").

    2. <u>Dr. Bogost's methodology is sufficiently reliable to offer expert opinions about the two TCGs.</u>

Miller also challenges the reliability of Dr. Bogost's methodology. An expert's opinion is reliable when it has "a reliable basis in the knowledge and experience of the relevant discipline." *Est. of Barabin*, 740 F.3d at 463 (citing *Kumho Tire Co.*, 527 U.S. at 149). The inquiry is a flexible one and should be construed liberally in favor of admission. *Hardeman v. Monsanto Co.*, 997 F.3d 941, 960 (9th Cir. 2021). Here, Dr. Bogost first obtained two sets of Lorcana starter decks, which included "ready to play" decks, a booster pack of cards, a tabletop play mat, printed rules, and "a set of cardboard chits." Dkt. No. 178 at 31. Dr. Bogost next considered what version of Rush of Ikorr to use in his analysis. *Id.* at 31–32. After reviewing case materials, Dr. Bogost obtained the materials Miller submitted to Upper Deck prior to his departure ("Version 2.6"), then played both games. *Id.* at 33. After playing the games, Dr. Bogost made observations about each game, and formed opinions as to particular "bundles of expression" drawing on his experience in game design. *Id.*

Miller takes issue with how Dr. Bogost played Version 2.6 because he did not use overlays, and did not play in team mode. Dkt. No. 177 at 9. But as Upper Deck points out, Dr. Bogost could

ORDER ON MOTIONS TO EXCLUDE EXPERT WITNESSES - 4

not recall whether he used the overlays and Rush of Ikorr can be played as a single-player or team-based game. Dkt. No. 144 at 6. It is true that the *Daubert* standard can be more difficult to apply where "expert testimony is 'experience-based' rather than 'science-based.'" *United States v. Valencia-Lopez*, 971 F.3d 891, 898 (9th Cir. 2020). But here, that Dr. Bogost initially made determinations as to which versions of the games to obtain based on the particular facts in the record, then proceeded to play the games, and draw conclusions based on his knowledge of game mechanics, is sound. To the extent that Miller takes issue with Dr. Bogost's conclusions because of how he played the card games, his remedy is cross examination. *Primiano*, 598 F.3d at 564.

Miller also moves to exclude Section E of Dr. Bogost's report, arguing it is relevant only to the now-dismissed copyright claim. Dkt. No. 187 at 8–9. Section E is entitled "The Work Mr. Miller Delivered to Upper Deck Was Substantially Complete[.]" Dkt. No. 178 at 50. Upper Deck contends that Section E provides context as to industry norms around confidentiality agreements, as well as "the value of what Miller disclosed." Dkt. No. 187 at 2. In Section E, Dr. Bogost first explains that "rough-looking" materials, such as Version 2.6, still represent a substantially complete work product in the game design process. Dkt. No. 178 at 52–53. While the completeness of Version 2.6 was relevant to the copyright claim, the state of that work product when Miller left Upper Deck and whether it was sufficiently complete or valuable may also be relevant to Plaintiff's contract claim. *See* Dkt. No. 184 at 19 ("the 2019 Agreement could be construed as prohibiting disclosure of the entire 'product' of Version 2.6"). Moreover, relevance challenges are generally best made via motions in limine or at trial in the context of the presentation of evidence.

Accordingly, Miller's motion to exclude Dr. Bogost is denied.

**B.  Defendant's Motion to Exclude Upper Deck's Copyright Damages Expert Dr. Roberto Cavazos is Granted.**

Dr. Roberto Cavazos is an economics professor with thirty years of experience, and has previously testified as a damages expert, though with limited intellectual property experience. Dkt. No. 176 at 5, 60, 76.  In this case, Dr. Cavazos provided his opinion on copyright damages, estimating economic harm by analyzing the "market value" of rights allegedly taken, and by calculating Defendant Ravensburger's profits allegedly derived from infringement of Upper Deck's TCG.  *See* Dkt. No. 176 at 8–9 (referencing, in "methodology" section of his expert report, both Ninth Circuit jury instructions and economic literature on copyright infringement damages and explaining that the relevant damages period commenced when Ravensburger began selling the allegedly infringing product).

Upper Deck claims that Dr. Cavazos's opinion remains relevant to the breach of contract claim. Dkt. No. 187 at 2.  Upper Deck argues that Dr. Cavazos's findings on reasonable royalties in the context of Ravensburger's alleged infringement can be transposed to Miller's alleged breach of contract.  *Id.* at 2–3.  Defendant counters that Dr. Cavazos's opinion should be excluded in its entirety both because it is now irrelevant, and for the reasons set forth in their previously filed motion to exclude.  *Id.* at 4–7, Dkt. No. 175.  The Court agrees with Defendant.

As to the profits strand of his analysis, Dr. Cavazos characterized his task as "calculat[ing] the profits that Defendant Ravensburger derived from its conversion, unfair competition, and copyright infringement."  Dkt. No. 176 at 9.  He does this by calculating the total of Ravensburger's global profits from Lorcana minus costs.  In his opening report, he attributes the entirety of this figure to Ravensburger's alleged infringement.  His second method for determining Upper Deck's damages, the reasonable royalty approach, considers "the lost licensing revenue [Upper Deck] failed to receive as a result of the Defendants' infringement," via a "reasonable

ORDER ON MOTIONS TO EXCLUDE EXPERT WITNESSES - 6

Case 2:23-cv-01936-KKE    Document 204    Filed 10/20/25    Page 7 of 12

royalty" calculation. *Id.* at 10. He reaches this conclusion by applying royalty rates from other licensing agreements for games.

Dr. Cavazos testified that his methods arise under copyright law, and were based upon his understanding from counsel of the applicable measure of copyright damages. *Id.* at 76–78. Dr. Cavazos makes similar acknowledgements in his opening and rebuttal reports. *Id.* at 9 (citing Ninth Circuit jury instructions on infringement-derived profits to justify his calculation of profits); *id.* at 38 (citing Ninth Circuit jury instructions on actual copyright damages to justify his reasonable royalty approach); *id.* at 9–10 (citing economic damages literature which provides that "[a] reasonable royalty can be calculated to proxy the lost market value of plaintiff's copyright. . . . i.e., the expert is asking how any reasonable buyer and seller would price a copyright license at the time of the infringement" in justifying reasonable royalty approach). It is undisputed that Dr. Cavazos's reports never reference contract damages, and he did not analyze the work for hire agreements at issue. In an attempt to resuscitate its damages expert, Upper Deck argues that "damages for breach [of contract] may be measured by reasonable royalty." Dkt. No. 187 at 2 (citing *ams-OSRAM USA Inc. v. Renesas Elecs. Am., Inc.*, 133 F.4th 1337 (Fed. Cir. 2025)). In *ams-OSRAM USA Inc.*, the Federal Circuit upheld breach of contract damages as "a reasonable royalty on [Defendant's] sales of products[.]" 133 F.4th 1337 at 1343. The Court does not take issue with the general proposition that a reasonable royalty rate could be used to compute damages in a breach of contract case. The problem is Dr. Cavazos did not offer that opinion here. He does not attempt to quantify any alleged breach of contract by Miller, nor assign value to Miller's work on Version 2.6 in the context of the profits from the Lorcana game, nor does it seem he would be qualified to do so. Rather, the royalty rate that Dr. Cavazos calculated considered only Ravensburger's total global revenues and profits from sales of Lorcana, and did not attempt to apportion any value to Mr. Miller's alleged disclosures of confidential information. *See* Dkt. No.

ORDER ON MOTIONS TO EXCLUDE EXPERT WITNESSES - 7

176 at 8–9, 12–13 (describing reasonable royalty calculation as "estimat[ing] economic harm" that was the "result of the conversion of [Upper Deck's] game and copyright infringement"). Dr. Cavazos's profits calculation similarly focuses exclusively on "the profits that Defendant Ravensburger derived from its conversion, unfair competition, and copyright infringement." *Id.* at 9.

To the extent Dr. Cavazos could now review Miller's 2019 work-for-hire contract and re-purpose his reasonable royalty calculation to fit breach of contract damages, Federal Rule of Civil Procedure 37(c)(1) precludes him from doing so. In *Inteum Co., LLC v. National University of Singapore* (W.D. Wash. Mar. 20, 2019), the court excluded a breach of contract damages theory that was not timely disclosed, and that differed from the contract damages theory disclosed during discovery. No. C17-1252-JCC, 2019 WL 1282014, at *1–2. In excluding the new theory of damages, the *Inteum* court emphasized that disclosure of the new "damages theory was made on the eve of trial … and Defendant has not had an opportunity to conduct discovery on Plaintiff's new damages theory and calculations." *Id.* at *2. This Court has similar concerns here. Upper Deck cannot, on the eve of trial, convert its expert's opinion from one sounding in copyright to a "value of use" theory of contract damages that piggybacks off a reasonable royalty calculation. Dkt. No. 187 at 2. This is especially so when the underlying reasonable royalty method, as applied by Dr. Cavazos, was rooted in a theory of copyright damages. *See supra*.

Moreover, Dr. Cavazos emphasized in his rebuttal report his opinion that it is Defendant's burden to demonstrate any apportionment of profits from the alleged infringement. Dkt. No. 176 at 37–47, 51–53. While this may be the appropriate burden in a copyright case, for a contract claim, it is Plaintiff's burden to demonstrate damages flowing from the breach. *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, (Cal. Ct. App. 2008), *as modified on denial of reh'g* (Feb. 5, 2008). Here, the alleged contractual breaches concern Miller's discussion of certain elements

ORDER ON MOTIONS TO EXCLUDE EXPERT WITNESSES - 8

of Version 2.6 with other game designers and a general allegation that Lorcana became more like Rush of Ikorr (known then as Pantheon) after Miller joined the Lorcana team. Upper Deck argues that because Dr. Cavazos generally opines in rebuttal that one-third of Ravensburger's profits should be attributable to game design (Dkt. No. 176 at 52), a contract-based damages opinion could be culled from his prior testimony. Dkt. No. 187 at 2. To the extent Dr. Cavazos offers this opinion, the Court finds he is not qualified to do so. Dr. Cavazos admitted he was not an expert in game design (Dkt. No. 176 at 64), did not identify the intellectual property at issue (*id.* at 63), and did not provide a basis for his one-third opinion, beyond that it "stands to reason" that some people would buy the game because of the underlying game design, not just because of the use of Disney IP. *Id.* at 47, 91–92 (admitting he did not consider value of Disney IP in assigning one-third figure because Dr. Bogost said "game play is important").

In sum, Dr. Cavazos's opinions are no longer relevant to the issues in this case, and to the extent that they could be, he is not qualified to provide them. Miller's motion to exclude his report and testimony is granted.

### C. Plaintiff's Motion to Exclude Defense Damages Expert James Pampinella is Denied.

James Pampinella is Miller's damages expert, and specializes in intellectual property damages. Dkt. No. 183-1 at 36–37; 183-3 at 6. Miller argues that the majority of Upper Deck's motion is moot because it largely concerned Pampinella's damages opinion on the copyright claim. Dkt. No. 187 at 7. Upper Deck argues generally that even though its copyright claim is dismissed, its motion to exclude Mr. Pampinella remains live. *Id.* at 3. Though it appears that Miller does not intend to introduce the majority of Pampinella's opinions, the Court will nonetheless address Upper Deck's motion for clarity.

Upper Deck does not argue that Pampinella is unqualified to testify as an expert on damages, or that his opinions are not relevant, but rather takes issue with 1) Pampinella's method

of using a "cost approach," to calculate damages, and 2) Pampinella's lack of game and game industry specialized knowledge. Dkt. No. 116 at 4.

1. Pampinella's costs approach is reliable.

Upper Deck specifically takes issue with Pampinella's decision not to factor Lorcana's profits into his costs approach damages calculation, as well as his choice to use only one of three methods recognized by economic literature to calculate the value of intangible assets. Dkt. No. 116 at 7–9. As to Pampinella's decision not to consider Ravensburger's Lorcana profits, Upper Deck's argument is "at bottom, [an] objection[] to Pampinella's assumptions, [and is] more appropriately addressed through cross-examination." *OWLink Tech., Inc. v. Cypress Technology Co.*, 2023 WL 4291486, at *2 (C.D. Cal. Feb. 16, 2023). Furthermore, because the copyright infringement claim is now dismissed (Dkt. No. 184), Upper Deck's methodological critique on profits falls flat. Upper Deck's argument that Pampinella should have considered Ravensburger's profits draws on sources of law which explain that copyright infringement damages can include an infringer's profits. *See* Dkt. No. 116 at 7, 13 (citing cases and Ninth Circuit model jury instructions on copyright infringement claims).

As to Upper Deck's general objection to Pampinella's use of the costs approach, Upper Deck acknowledges that the method is one of three that is accepted by economic literature. Dkt. No. 116 at 8. And while publication of a method does not guarantee its reliability, publication "increases the likelihood that substantive flaws in methodology will be detected." *Daubert*, 509 U.S. at 593. Thus, Upper Deck's objection to Pampinella's decision to rely solely upon the costs approach goes to weight rather than admissibility. *Atlas Flooring, LLC v. Porcelanite S.A. DE C.V.*, 425 F. App'x 629, 632–34 (9th Cir. 2011) (affirming district court's admission of expert testimony on damages where expert witness used a professionally accepted method).

ORDER ON MOTIONS TO EXCLUDE EXPERT WITNESSES - 10

Upper Deck also takes issue with Pampinella's results under the costs approach, arguing that "it is illogical and unreliable for [Pampinella] to assert that there are no actual damages[.]" Dkt. No. 116 at 5. While Pampinella found no actual damages as to the alleged conduct of Ravensburger and Miller, he also concluded that Upper Deck could have suffered economic damages of up to $39,000—the amount paid to Miller under his contracts with Upper Deck. Dkt. No. 183-1 at 15–16. Upper Deck's objection on this point ignores that, in reviewing a motion to exclude under Rule 702, courts focus on methods, not conclusions. *See Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995) (explaining test for reliability "is not the correctness of the expert's conclusions but the soundness of his methodology.").

    2. <u>Pampinella's lack of knowledge of games or the gaming industry does not render him unqualified to testify about contract damages.</u>

The Court is also unpersuaded that Pampinella's lack of expertise in the gaming industry damages renders his opinion inadmissible for the same reason it found Dr. Bogost's lack of specialized TCGs experience not to be dispositive. To the extent Pampinella's lack of knowledge about the gaming industry renders his otherwise admissible conclusions shaky, the appropriate remedy for Upper Deck is vigorous cross examination. *Daubert*, 509 U.S. at 596. Moreover, Defendant concedes they are not offering Pampinella as a gaming expert, and the Court will hold them to this representation at trial.

Accordingly, Upper Deck's motion to exclude is denied, and Pampinella may testify as an expert witness on contract damages.

### III.  CONCLUSION

For the foregoing reasons, the Court:

- DENIES Miller's motion to exclude Dr. Bogost's testimony;
- DENIES Upper Deck's motion to exclude Pampinella's testimony; and

ORDER ON MOTIONS TO EXCLUDE EXPERT WITNESSES - 11

- GRANTS Miller's motion to exclude Dr. Cavazos's testimony.

Dated this 20th day of October, 2025.

Kymberly K. Evanson
United States District Judge

ORDER ON MOTIONS TO EXCLUDE EXPERT WITNESSES - 12